STATE OF MISSOURI ex rel. JOURNAL PRINTING COMPANY, Respondent, v. JOHN DREYER et al., Appellants.

St. Louis Court of Appeals, June 2, 1914.

1. MANDAMUS: Amendments. Under Sec. 1864, R. S. 1909, it is proper to permit an alternative writ of mandamus to be amended.

2. ————: Pleading: Alternative Writ. The alternative writ is regarded as the first pleading in a mandamus proceeding.

3. ————: Appellate Practice: Conclusiveness of Findings. Mandamus is a civil proceeding, in the nature of an action at

State ex rel. v. Dreyer.

law, and the findings of the trial court as to the facts, when supported by any substantial evidence, cannot be disturbed, on appeal.

4. ———: **Trial Practice: Sufficiency of Findings.** In a proceeding by mandamus to compel the council of a city to award the contract for city printing to relator in accordance with its bid, which was the lowest, where the defendant councilmen defended their action on the ground that the bid of the bidder to whom the award was made, although higher than that of relator, was nevertheless a better bid, and that they had a right to award the contract as they did, since the ordinance provided that contracts should be awarded to the lowest and *best* bidder, *held* that the failure of the trial court to make a specific finding relative to the comparative circulation of the two newspapers published by relator and the bidder who was awarded the contract, was immaterial, in view of the fact that the court found that both newspapers had a general circulation and were sufficient to impart knowledge of the proceedings to be published and that both were equally equipped with plant, which findings sufficiently covered the questions of fact relative to the contention that the bid of the bidder who was awarded the contract, although higher, was nevertheless a better bid than that of relator.

5. ———: **Public Officers: Controlling Discretion Improperly Exercised.** The office of the writ of mandamus is, in general, to compel the performance of a mere ministerial duty, and while the writ does not issue to direct or control the discretion of public officers, where they have exercised their discretion reasonably, fairly, impartially and in good fath, yet, notwithstanding an official discretion is reposed in them, the writ lies, where they have refused to exercise such discretion in a lawful manner, impartially and in good faith.

6. ———: ———: ———. In response to a request for bids for city printing, two newspaper companies submitted bids, one of which amounted to about three thousand dollars more than the other. The city council awarded the contract to the higher bidder, and the lower bidder brought mandamus to compel the council to rescind the award to the higher bidder and to award the contract to it. The defendant councilmen defended on the theory that the bid of respondent newspaper company, although higher than that of relator, was nevertheless a better bid and that they had a right to award the contract as they did, since an ordinance provided that contracts should be awarded to the lowest and best bidder, and another ordinance gave them the right to reject any and all bids. *Held,* that, in view of the trial court's finding that the award made to the higher bidder was made in bad faith and without the exercise at all of the official

discretion resposed in the councilmen, and was made in collusion with such bidder for the fraudulent purpose of awarding it the contract, notwithstanding its bid was not the lowest and best, and in view of the further finding that relator's bid was the lowest and best, it was proper to issue a peremptory writ of mandamus commanding the defendant mayor and councilmen to set aside the award made to the higher bidder and to enter into a contract with relator, in accordance with its bid, under the rule that mandamus lies to correct or control the action of administrative officers and bodies, notwithstanding an official discretion is reposed in them, where they have refused to exercise such discretion in a lawful manner, impartially and in good faith.

Held, by REYNOLDS, P. J., dissenting, that the peremptory writ should not have been issued, since the command it contains to set aside the award made and to make the award to relator is an interference with the discretion, and an usurpation of a power, which is lodged in the city authorities alone; the rule being, that the courts will compel a public officer to exercise his discretion, but will not direct how it shall be exercised or what conclusion or judgment shall be reached.

7. MUNICIPAL CORPORATIONS: Bids for Public Work: Rights of Bidder. Where the right to reject all bids is expressly reserved by municipal officers, they cannot act arbitrarily or capriciously, or through favoritism or collusion, or in bad faith, thereby abusing the discretion reposed in them or failing to exercise it; and, although the contract may be bona fide awarded to another than the lowest bidder, such bidder has the right to fair consideration and to have an award corruptly and collusively made to another set aside.

8. MANDAMUS: Performance of Public Duty: Private Person as Relator. Although the duty sought to be enforced by mandamus is of a public character, nevertheless if the person applying for the writ has a special and peculiar interest in its performance and will be injuriously affected if the duty be not performed, the action may be maintained at the relation of such person.

9. ————: ————: ————. In response to a request for bids for city printing, two newspaper companies submitted bids, one of which amounted to about three thousand dollars more than the other. Although the ordinances required that contracts for city work should be awarded to the lowest and best bidder, the council awarded the contract to the higher bidder, and the lower bidder brought mandamus to compel the council to rescind

the award made and to award the contract to relator. The trial court found that the award to the higher bidder was made in bad faith and without the exercise at all of the official discretion reposed in the councilmen, and was made in collusion with such bidder for the fraudulent purpose of awarding it the contract, notwithstanding its bid was not the lowest and best. *Held,* that relator has such a special and peculiar interest in the performance by the councilmen of their public duty that it has the right to maintain the proceeding.

*Held,* by REYNOLDS, P. J., dissenting, that relator has no standing to maintain the proceeding for the enforcement of a mere personal right.

Appeal from Hannibal Court of Common Pleas.—*Hon. William T. Ragland,* Judge.

AFFIRMED.

*Charles E. Rendlen* and *Lewis O'Connor* for Mayor and Aldermen, appellants.

*Charles E. Rendlen* and *D. H. Eby* for Courier-Post Publishing Company, appellant.

(1) Alternative writ must require respondent to do or show cause why he has not done so. It must be in the alternative or it is no alternative writ. 26 Cyc. 447; State ex rel. v. Board of Police Comrs., 108 Mo. App. 103; 2 Missouri Practice, Bacon, sec. 1041, p. 1155-56. Alternative writ can be no broader than petition. People ex rel. v. Board of Supervisors Clark County, 84 N. E. 697, 234 Ill. 62; 27 Cyc. 474. Where respondent has no power to perform the command, a writ will not go. High on Ex. Legal Remedies (3 Ed.), sec. 14, p. 19; 26 Cyc. 166-67. Respondents were for for the first time on September 18th given an alternative course of procedure, and then for the first time commanded to do an act and then to do so on a past and impossible day, viz., September 15th. This cannot be done. Mandamus is not a prerogative writ in the United States, but one must show himself entitled

thereto. High on Ex. Legal Remedies (3 Ed.), secs. 3, 4, pages 6-8; sec. 9, p. 12; sec. 522, p. 488; sec. 537, p. 497; State ex rel. v. Lewis, 76 Mo. 381. (2) Findings of fact is a substitute for a special verdict. Nichols v. Carter, 49 Mo. App. 405. When the court sitting as a jury undertakes to or makes written findings of facts, it must find upon all the substantive or constitutive facts put in issue, failure to do so, or a general finding is not enough, and is reversible error, and open to attack in the appellate court. Sec. 2083, R. S. Mo. 1909; Freeman v. Hemenway, 75 Mo. App. 621; St. Louis Hospital Association v. Williams, 19 Mo. 612; Nichols v. Carter, 49 Mo. App. 401; Allison v. Darton, 24 Mo. 346. Where there is evidence pro and con on an issue, or the evidence is uncontradicted, there should be a finding thereon, not doing so is error. Insurance Co. v. Tribble, 86 Mo. App. 546; Cochran v. Thomas, 131 Mo. 278; Nichols v. Carter, 49 Mo. App. 401; Downing v. Bourlier, 21 Mo. 151. Having undertaken to make written findings of fact, being in the nature of special verdict, the court should find upon all constitutive facts that parties may make exception thereto in order that the appellate court may make a revision of the case. Exception is accomplished by motion for new trial, as here done. Citizens Bank v. Bolen, 121 Ind. 301, 23 N. E. 147; Railroad v. Hart, 119 Ind. 273; Nichols v. Carter, 49 Mo. App. 405. It has been held that if special finding is silent on a material point it is deemed a finding against the party who has the burden of proof. Cochran v. Thomas, 131 Mo. 278; Stotts City Bank v. Miller Lumber Co., 102 Mo. App. 75. If there is no evidence to support a finding of fact, such finding is reversible error. Freeman v. Hemenway, 75 Mo. App. 621; Nochols v. Carter, 49 Mo. App. 401. (3) The essence of the reason for the publication of the official acts of a municipal body is publicity, to the end that all who are to be bound by such official acts or whose property rights directly af-

fected thereby shall be informed of their existence. 2 McQuillin, Municipal Corporations, sec. 697, p. 1514-15. The largest circulation enters into and is primary consideration as to which paper was the best. (4) In determining who is lowest and best bidder, judgment and discretion is required, it is not a ministerial act, and mere price alone is not the touchstone but here publicity and circulation. Price doesn't determine the best bidder. 2 Dillon Mun. Corp., sec. 811; 1 Elliott on Roads and Streets, sec. 636; 1 Abbott on Mun. Corp., sec. 268; State ex rel. Union Fuel Co. v. Lincoln, 94 N. W. 719; U. S. Wood Preserving Co. v. Sundmaker, 186 Fed. 678; State ex rel. v. McGrath, 91 Mo. 386; State ex rel. v. Meier, 142 Mo. App. 309. (5) The ordinances provide that, all contracts shall be let by contract to the lowest and best bidder, and the "city shall retain the right to reject any and all bids they may see fit." The above ordinance and advertisement thereunder makes the awarding of the printing contract and determination as to which is the lowest and best bid by the council a deliberative and discretionary act, and not a ministerial act, and can not be controlled by mandamus. State ex rel. Montfort v. Meier, 142 Mo. App. 309; State ex rel. v. McGrath, 91 Mo. 386; State ex rel. Union Fuel Co. v. Lincoln, 94 N. W. 719; Stanley-Taylor Co. v. Board of Supervisors, 67 Pac. 783; U. S. Wood Preserving Co. v. Sundmaker, 186 Fed. 683; Paving Co. v. Murphy, 78 Fed. 28; State ex rel. v. Fort, 180 Mo. 108; State ex rel. v. Jones, 155 Mo. 576; State ex rel. v. Meier, 143 Mo. 446; State ex rel. v. Gregory, 83 Mo. 136. The laws and ordinances have committed the power of deciding to the defendant. Were the court to interfere, it might substitute its belief and its judgment for the belief and judgment of the board—a result our system does not contemplate. Stanley-Taylor Co. v. Board of Supervisors, 67 Pac. 783. (6) Relator is without sufficient interest to maintain this action. The rejection of a lowest bid-

der's proposal and the award to a higher bidder gives the disappointed bidder no contractual, vested or specific right that he can enforce in a court, nor can he bring mandamus thereon.   Anderson v. School Board, 122 Mo. 61; Coquard v. School Board, 46 Mo. App. 6; U. S. Wood Preserving Co. v. Sundmaker, 186 Fed. 684; Colorado Paving Co. v. Murphy, 78 Fed. 28; Vincent v. Ellis, 88 N. W. 836; also cases cited under point 5.   Petitioner must show he has a clear legal right to have the act performed by defendant; nothing essential to that right will be taken by intendment, and where the right is doubtful the writ will be denied.   5 McQuillin's Municipal Corporations, sec. 2545, p. 5270.   (7)   Presumption is that decision of municipal board was correct and regular, and that they have not abused their discretion.   Fact that award is not made to lowest bidder in price does not indicate fraud.   Kochtitzky v. Herbert, 160 Mo. App. 454; Gilmore v. Utica, 29 N. E. 843; Peckham v. Watsonville, 71 Pac. 169, 138 Cal. 242; Elliott on Streets, 410, 411; 26 Cyc., 476.

*Chas. T. Hays* and *F. L. Schofield* for respondent.

(1)   The prime object and purpose of the law requiring that contracts for the city printing be awarded only on competitive bidding, was to protect the city and the citizens against extortion by favorites of partisan city councils.   (2)   This court will not, in a proceeding such as this, make its own independent and critical review of the evidence to determine whether it supports the findings of the court below.   Creisser v. Emmons, 161 S. W. 613; Roedel v. Ins. Co., 160 S. W. 44; Lumber Co. v. Ice & Power Co., 160 S. W. 49; Winfrey v. Matthews, 161 S. W. 583.   (3)   Whatever the law may be in other jurisdictions, in this State it is firmly established that the writ of mandamus will lie both to correct and to control the action of executive

boards and other tribunals, notwithstanding an official discretion may be reposed in them by law, where they have refused to exercise such discretion in a lawful way, fairly, impartially, reasonably and in good faith. State ex rel. v. Lafayette Co. Ct., 41 Mo. 221; State ex rel. v. Public Schools, 134 Mo. 296; State ex rel. v. Board of Health, 206 Mo. 550; State ex rel. v. Bourne, 151 Mo. App. 104; State ex rel. v. Roach, 230 Mo. 408; State ex rel. v. Philips, 96 Mo. 570; State ex rel. v. Philips, 97 Mo. 331; State ex rel. v. Broaddus, 234 Mo. 331; State ex rel. v. Caulfield, 234 Mo. 331; State ex rel. v. Smith, 172 Mo. 618; State ex rel. v. Lamb, 160 S. W. 55. See, also, People ex rel. v. State Racing Com., 82 N. E. 723; Board Trustees v. State, 93 N. E. 851; State ex rel. v. Gunn, 92 Minn. 436; State Board v. People, 93 Ill. App. 436; State ex rel. Printing Co. v. Cornell, 71 N. W. 961; Board of Com. v. State, 120 Pac. 913; State v. Saline Co., 19 Neb. 253; State v. City of Shreveport, 50 So. 3; Adamson v. Railroad, 26 N. Y. Sup. 136.

ALLEN, J.—This is a mandamus proceeding instituted in the court of common pleas of the city of Hannibal. From a judgment awarding a peremptory writ in favor of relator, certain defendants have appealed to this court.

The relator is a corporation engaged in printing and publishing a daily newspaper in the city of Hannibal, known as the Hannibal Morning Journal, and in conducting a general printing business in said city. The defendants are the mayor of said city, the twelve aldermen composing the city council thereof, and the Courier-Post Publishing Company, the latter also being a corporation engaged in printing and publishing in such city a daily newspaper known as the Hannibal Courier-Post and in conducting a general printing business.

The controversy pertains to the awarding of a contract to do certain city printing for the city of Hannibal, to-wit, the publication and printing of the annual report of .the auditor of said city, the proceedings of the city council, the various ordinances and resolutions passed by the latter, and various "locals" and notices pertaining to the affairs of said city.

It appears that the ordinance of the city require its council to let all contracts for work and material involving two hundred dollars or more, where the city is a party, to the lowest and best bidder, the city advertising for such bids at least three days before the same are opened. In the instant case it appears that the city clerk, whose duty it was so to do, caused advertisement to be duly made on June 25, 1913, and for seven days thereafter, to the effect that sealed proposals would be received at his office up to noon of July 7, 1913, for the doing of certain city work for the following ensuing fiscal year, including "publishing council proceedings, auditor's report, all local notices and ordinances;" that in compliance with said advertisement the relator, Journal Printing Company, duly submitted its sealed bid for doing the aforesaid publishing and printing for the year in question, as follows:

"Council proceedings, two cents per line.

"Locals, notices and resolutions, three cents per line first insertion and for each following insertion two cents per line.

"Ordinances, twenty-five cents per inch.

"Auditor's Annual Report, twenty-five cents per inch including 200 copies in pamphlet form."

Likewise the defendant, Courier-Post Publishing Company, pursuant to the advertisement aforesaid, submitted its sealed bid for doing such publishing and printing as follows:

"Council proceedings, six cents per line per insertion.

"Locals and reading notices, seven cents per line per insertion.

"Resolutions, eight cents per line per insertion.

"Ordinances, seventy-two cents per inch.

"Auditor's Report, fifty cents per inch, which will include furnishing 200 books of same."

These were the only bids received. In fact it appears, and so the trial court found, that there were "only two printing and publishing concerns in said city, to-wit, relator and said defendant publishing company, who constituted the only two possible bidders for said printing." These bids were opened in the council on July 10, 1913, and thereupon it was moved by one member of the council that the contract be awarded to the relator. Another member, however, moved, as a substitute, that the matter be referred to the finance committee of the council, "with power to act." The latter motion prevailed, but, on motion to reconsider the same, the matter was referred to the finance committee "to report."

To an understanding of the facts presented by this record, and here involved, it should be stated that of the twelve members composing the city council at the time in question, nine were, politically speaking, republicans, and three democrats. The finance committee was composed of three members, all republicans, viz., Aldermen Jones, Mills and Storrs. After much delay, during which time a caucas was held by the republican members of the council relative to the matter, at which it appears that the defendant publishing company was represented by counsel, a report was made to the council by a majority of the members of the finance committee as follows:

"We, your committee, to whom was referred the bids for city printing, beg leave to report we find, after due investigation, that the democratic party has been in charge of the administration of city affairs four years out of five for the past twenty years: We find

by the records that the prices for the city printing at present time, if not higher, have been in existence all these years. We also find the Hannibal Morning Journal, a paper published in the city of Hannibal, Mo., has had the city printing at the above times when the democrats had charge of the city affairs.

"Now the Journal comes to us and says: You are paying from one to two thousand dollars more per year for this printing than it is worth! Why was it necessary for the Hannibal Morning Journal to run all these years, they doing the city printing four years out of five, at this late day make this discovery? Was it that the democratic organ discovered that the affairs of the city would be in hands of a republican administration for several years? Now they come in as an informer and wish you to consider theirs as the best and lowest bid; and the informer must always have his price, in this case, the city printing.

"If the Journal Printing Co., will return to the city what they now declare excessive prices for city printing, that for the greater part of twenty years they have taken from the city, they may be in a position to justify their position. Until they do so, their claims can have no weight.

"In all advertising one must consider the medium used. In the matter of the city publication we want the greatest publicity; for complete information of the council's action is due all the people. Such being the case, we must consider which of the two bids is the lowest and best, not from the mere amount stated in the bids, and we find, in our judgment, that, taking into consideration all points of view, that the Courier-Post is the best medium to convey this information to the citizens and has the largest circulation, we believe, and the Courier-Post's is the lowest and best bid.

"Now, we, the committee, after due consideration, find that this is only another case of 'Whose ox is being gored.' During all the years when the printing

was being done by the democratic organ the scale of prices ranging about twenty per cent more than those now offered by The Courier-Post were in effect and were deemed fair and equitable; but now that the administration is in the hands of the republicans, and certainly will so continue for the next two years, the hue and cry is raised that the city is wasting the people's money in considering a bid at the rates about twenty per cent below those so long used, and are confronted by a bid from the said democratic paper said to be a saving of something like one to two thousand dollars per year. Now, if the bid of the Courier-Post is extortionate, why should we not consider the work done for the city by the Hannibal Morning Journal Co., for the past twenty years, and is it not pertinent to take measures and to request the refund from the said paper of the difference in present bid and price paid for work done by them for the city in the past twenty years?

"Why should it take the Journal all these years to discover the perversion of the city funds? If such be the fact, they should be first to offer to return extortionate prices.

"We, your committee, recommend that the contract for the city printing for the ensuing year be awarded to the Courier-Post Publishing Company and the paper presenting what we consider the best bid."

This report was prepared by Mr. Jones of the finance committee, after obtaining legal advice with respect to his own personal liability in the premises, and was signed by him and Mr. Mills. Mr. Storr, the other member of the committee refused to sign it. Upon such report being made the same was approved and the contract awarded to the Courier-Post Publishing Company, by a vote of seven to five; two of the republican members of the council, Mr. Bender and Mr. Storr voting with the three democratic members against the adoption of the report and the said awarding of the contract. At this meeting of the

council, the relator gave notice to the effect that, unless the contract was awarded to it, the matter would be contested. Thereafter, and before a written contract had been executed between the city and the Courier-Post Publishing Company, the relator instituted this proceeding.

The petition, after alleging the facts as, in substance, set out above, avers, among other things, that the award so made to the Courier-Post Publishing Company "was not made in good faith and for the honest purpose of complying with the law in regard to awarding such contracts to the lowest and best bidder, but was made in collusion by the aldermen who voted therefor and the Courier-Post Publishing Company, for the fraudulent purpose of awarding said contract and printing to defendant company regardless of its being the highest and worst bidder and for the purpose of defrauding relator of its rights as a bidder to have its bid fairly considered; and that, in so making said award, they acted intentionally, wrongfully, arbitrarily, capriciously, for improper reasons, in bad faith and without any excuse or justification in law or in fact, and that by so doing their said act constituted a fraud on the relator and the citizens of said city of Hannibal;" that the relator's bid was fraudulently refused, and "the said award collusively, capriciously, wantonly and out of mere favoritism made to the Courier-Post Publishing Company."

Upon the filing of the petition, the alternative writ of mandamus issued in accordance therewith. Thereafter, during the pendency of motions to quash the alternative writ, which had been interposed, the court permitted the writ as well as the prayer of plaintiff's petition to be amended in certain particulars not necessary to be here stated.

Defendant Storr filed a separate return, setting up that as alderman he cast his vote "against the bid of defendant, Courier-Post Publishing Company . . .

and in favor of relator's bid;" that "as a member of the finance committee he cast his vote against the bid of defendant Courier-Post Publishing Company" and that "he was not a party to or connected with any act or acts of the city council complained of in the relator's writ of mandamus." And he prayed that no peremptory writ be issued against him and that he be dismissed with his costs.

Likewise defendants Hurley, Bender, Fitzpatrick and Pitts filed "their joint and several answer and return to the alternative writ," wherein they stated "that they considered and still consider said bid of said Journal Printing Company to be the lowest and best of said bids; that they were at all the times mentioned in said writ and still are ready and willing to accept" relator's bid and to award the contract to it, and that "its acceptance would result in a saving to the city of Hannibal of a large sum of money." And they prayed to be discharged with their costs.

The defendants, Dreyer, Jones, Mills, Turner, Simmons, Walter, Penoyer and Rutherford filed a joint return and the defendant Courier-Post Publishing Company its separate return. And other pleadings were filed both by relator and said defendants. These pleadings are lengthy, and their contents need not be set out, for the real issues involved will otherwise sufficiently appear.

It may be stated, however, that the contesting defendants set up and rely in part upon a section of an ordinance of the city of Hannibal relative to contracts and supplies which is as follows: "Where work is to be done under the supervision of a special committee, such committee, and where there is no committee, the city shall retain the right to reject any and all bids they may see fit."

The evidence discloses that relator does not publish a paper on Mondays, nor on certain holidays, to-wit: Fourth of July, Labor Day, and Christmas, and

when one of these holidays falls on Monday, there is no publication of the paper until the following Wednesday morning; and that the Courier-Post Publishing Company issues its paper every day excepting Sundays. Defendants introduced much evidence relative to the circulation of the two newspapers, which will be noticed later in the course of the opinion.

Having heard the evidence adduced, the lower court, though not thereto requested, made a finding of facts, which, as it is lengthy and embraces the pertinent facts above referred to, need not be fully set out. The court found, however, that "both the relator and the defendant, Courier-Post Publishing Company were in a strong, prosperous condition and were equally equipped with plant, appliances and other accessories necessary for promptly, accurately and efficiently printing and publishing the reports and official proceedings of said city, as comprised within the said published notice for sealed bids; that both the said Hannibal Morning Journal and Hannibal Courier-Post were at said time and are of large and general circulation in said city of Hannibal; and that by reason thereof either of said papers is efficient for the purpose of bringing home to the knowledge of the citizens and taxpayers of said city the official proceedings of said council and of the officers of said city when published therein. That said contract involves largely more than $200, to-wit: Approximately the sum of five thousand dollars; that said mayor and said city council have, under the ordinances of said city, the official discretion, if honestly exercised, to reject any and all bids submitted for city supplies and work; that the majority of said finance committee, in making their finding that the said bid of the defendant Courier-Post Publishing Company was the lowest and best bid, did not act in good faith, but that their said finding was colorable and was made in collusion with the defendant Courier-Post Publishing Company and other

members of the said city council for the fraudulent purpose of furnishing a basis to award said printing contract to defendant Courier-Post Publishing Company, regardless of whether the bid of said defendant publishing company was or was not the lowest and best bid; that the said bid of relator was the lowest and best bid submitted for said printing; that the cost of said printing, at the prices designated in said relator's said bid, is approximately three thousand dollars less than at the prices designated in the bid of defendant, Courier-Post Publishing Company; that, in awarding said printing contract to defendant Courier-Post Publishing Company, instead of to relator, said city council did not act in good faith and with the honest purpose of awarding said contract to the lowest and best bidder; that, in making said award, they did not exercise the official discretion reposed in them in that behalf, but that, acting in collusion with the defendant Courier-Post Publishing Company, they arbitrarily awarded said contract to said Courier-Post Publishing Company out of favoritism as a party reward for partisan political services and regardless of whether it was or was not the lowest and best bidder; and that by so doing their act constituted a fraud on the relator and the citizens and taxpayers of the city of Hannibal.''

It was therefore ordered and adjudged by the court that the defendant Dreyer, as mayor, refrain from executing the contract of the defendant Courier-Post Publishing Company pursuant to said award, and that he, as mayor, and the said aldermen, ''award said contract to the relator and enter an order of record in the record and proceedings of said council, showing that said contract and printing were awarded to relator at the rates named in said bid, and that a contract was ordered executed accordingly, and that a rejection has been made of the bid of defendant Courier-Post Publishing Company and accept from relator a good

and sufficient bond, as required by law and ordinance, and enter into contract in writing with relator in accordance with its bid and as required by law and ordinance;" that "the defendant, Courier-Post Publishing Company relinquish and cancel any and all rights and claims accruing to it by reason of the making of its said bid and the making of said award to it;" and that a peremptory writ of mandamus issue, commanding the defendants accordingly.

And it was ordered that the relator have and recover from contesting defendants, appellants here, its costs.

I. One assignment of error pertains to the action of the trial court in permitting the amendments of the alternative writ and petition. But it is quite clear that it was proper to permit such amendments and that appellants cannot now complain thereof. [See State ex rel. v. Bourne, 151 Mo. App. 104, 131 S. W. 896; State ex rel. v. Hudson, 226 Mo. 239, 126 S. W. 733; State ex rel. v. Baggott, 96 Mo. 63, 8 S. W. 737; Sec. 1864, R. S. 1909.]

The alternative writ is regarded as the first pleading in a mandamus proceeding. [See Hambleton v. Dexter, 89 Mo. 188; State ex rel. v. Beyers, 41 Mo. App. 503.] And the provisions of our Code relating to amendments of pleadings are expressly made to apply to writs of mandamus, by section 1864, supra.

II. Respecting the merits, we may say that the findings of the trial court, as above set out, are amply sustained by the evidence. Indeed it is impossible to see how the court could have found otherwise, in view of the evidence adduced. But mandamus is a civil proceeding in the nature of an action at law, and the findings of the trial court as to the facts in such a case, when supported by any substantial evidence, cannot be disturbed on appeal. [See State ex rel. v. Bourne,

supra; State ex rel. v. Insurance Co., 169 Mo. App. 354, 152 S. W. 618.]

There is much said in appellants' brief anent the failure of the court to make a specific finding relative to the comparative circulation of the two newspapers in question. But this point is without merit, for the reason alone, if for none other, that it appears that no essential facts were omitted from the court's finding. The court found both newspapers to be "of large and general circulation in the city of Hannibal," and either "efficient for the purpose of bringing home to the knowledge of the citizens and taxpayers of said city the official proceedings of said council when published therein;" and that the two publishing companies "were equally well equipped with plant, appliances and other accessories necessary for promptly, accurately and efficiently printing and publishing the reports and official proceedings of the city."

These findings, which are thoroughly in accord with the evidence, sufficiently cover the questions of fact relative to the contention that the bid of appellant publishing company, though higher, was nevertheless a *better* bid than that of relator. And in view of the facts, so found, it is manifest that, though the circulation of the newspaper published by appellant publishing company exceeded that of relator's newspaper by a few hundred subscribers—as appellants' evidence tends to show, and which the relator did not attempt to controvert—it could afford no just ground for accepting the bid of appellant publishing company upon the theory that for this reason it was the better bid, though by far the higher of the two submitted. In fact it is readily apparent that the attempt of the appellant members of the city council to justify their action upon the ground of such alleged difference in the circulation of the two newspapers is a mere pretext and does not serve even to thinly veil the real motives which actuated them.

III. The real questions involved are (1) whether mandamus will lie at all, and (2) if so, whether it will lie at the instance of this relator.

Attending the first of these, there can be no doubt that a writ of mandamus will not issue to direct or control the judgment or discretion of public officers. The office of such a writ is, in general, to compel the performance of a mere ministerial duty. But it does not follow that mandamus will never lie to compel the performance of a duty where there is an official discretion, with respect to the subject-matter involved, reposed in the officer or officers sought to be coerced by the writ. It has been repeatedly held that mandamus will lie where there has been a palpable abuse of discretion; that discretion must always be reasonably, fairly and impartially exercised, in good faith; and that whether or not it has been so exercised is a question for the courts. And the great weight of authority is to the effect that mandamus will lie to correct or control the action of administrative bodies and other tribunals, notwithstanding that an official discretion may be reposed in them, where they have in fact refused to exercise such discretion in a lawful manner, impartially and in good faith. [See State ex rel. v. Adcock, 206 Mo. 550, 105 S. W. 270; State ex rel. v. Public Schools, 134 Mo. 296, 35 S. W. 716, 56 Am. St. Rep. 503; State ex rel. v. Board of Health, 103 Mo. 22, l. c. 29, 15 S. W. 322; State ex rel. v. Roach, 230 Mo. l. c. 446, 130 S. W. 689; State ex rel. v. Lafayette County Court, 41 Mo. 221; State ex rel. v. Bourne, supra; Village of Glencoe v. People ex rel., 78 Ills. 382; Illinois State Board, etc., v. People ex rel., 123 Ills.227; 26 Cyc. 161, 162, and authorities cited.]

In State ex rel. v. Public Schools, supra, the writ was sought to compel "the board of president and directors of the St. Louis public schools, and certain members of said board constituting the 'election com-

mittee' of said board,'' to rescind certain appointments of judges and clerks of election, made for the election of a member of such board.   As to whether mandamus would lie the Supreme Court, said:

''Recurring, then, to the main contention, that the board of directors having once made a list of appointments its action is not subject to be revised by a writ of mandamus from this court, however great the abuse of the discretion confided to it, or however arbitrary its conduct under the circumstances, let us inquire if such is indeed the law of the land.

''While it is generally true that mandamus will not lie to control the discretion of an inferior tribunal in whom a discretion is vested in the performance or nonperformance of certain duties devolved upon it by law, it is well settled that if the discretionary power is exercised with manifest injustice the courts are not precluded from commanding its due exercise.   Such an abuse of discretion is controllable by mandamus.''

And various authorities are cited and quoted from in support of the court's ruling.

In State ex rel. v. Adcock, supra, it was contended that a writ of mandamus could not issue against the members of a board of health, upon the ground that the latter had exercised their discretion in the premises and that the judgment of the board was final.   As to this the Supreme Court said:

''They claim that they exercised their best judgment, and having done so the incident is finally closed. Does the law place in the hands of administrative bodies such arbitrary power?   We think not.   If so, the courts are not open to the aggrieved, if such there be, and this case is wrongfully here.   If so, such bodies can arbitrarily refuse any applicant the rights prescribed by the law, and he is without remedy.   If so, such a board can hear the evidence and against all the evidence, pass its *ipse dixit*, and refuse to the appli-

cant the privileges granted by the law. Such is not consonant with reason, and it is not the law."

In State ex rel. v. Bourne, supra, the relator bank sought by mandamus to compel a school board to let to it, as a depositary, the school funds of the district, the relator having submitted the higher of the only two bids submitted, and it appearing that both banks were thoroughly solvent and strong institutions. As to whether mandamus would lie the Springfield Court of Appeals through Nixon, J., after quoting from a number of authorities, said:

"Appellants claim that they exercised their discretion on this question and that their judgment is final. Discretion must always be reasonably exercised. As to whether or not it is reasonably exercised is a question for the courts. In the trial of this case, the evidence . . . goes also to show that without regard to the difference in the bids made by the respective institutions, the funds were in fact awarded to the Miners Bank, because that bank had a personal preference of the majority of the board, a preference not based on sound legal discretion, but on purely personal favor. . . .

"The acumen and learning of counsel for the appellants has utterly failed to furnish any reason that commends itself to a disinterested person why the school funds were awarded to the lowest bidder instead of to the relator, the highest bidder."

With respect to the letting of contracts for public work, the general rule is stated in Cyclopedia of Law & Procedure to be, that "where the right to reject all bids is expressly reserved; or where the proposal is to the 'lowest and best bidder,' the 'lowest responsible bidder' or other similar qualification is employed, the award of the contract within the discretion of the municipal authorities may be made bona fide to another bidder than the lowest, and the lowest bidder will have no right to demand the award to him . . . but under

all circumstances the lowest bidder has the right to fair consideration and treatment; and an award of the contract to another by corruption, by collusion or for any other than legal and just considerations will be voidable at his option." [See 28 Cyc. 663, 664.] And this appears to be well supported by the authorities.

It is sometimes broadly stated that the duties of officers intrusted with the letting of such contracts involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus." [See High's Extraordinary Legal Remedies, sec. 92.] But a consideration of the authorities makes it appear that there is no ground for any reasonable distinction between a case involving the letting of contracts for public work and any other in which the exercise of discretion is involved, but where such discretion is palpably abused or not in fact exercised at all; and that the cases in which the writ has been denied where the letting of public contracts was involved are, for the most part at least, in accord with the general rule that the writ will not lie to direct or control the discretion of public officers, exercised fairly, impartially and in good faith, and have no application to a case where fraud, collusion, bad faith, or improper motives may be made to appear.

Appellants greatly rely upon State ex rel. v. McGrath, 91 Mo. 386, 3 S. W. 846, which was a mandamus proceeding seeking to compel the State commissioners of public printing to award to the relator a certain contract. The circuit court denied the peremptory writ and the Supreme Court affirmed this on appeal. But we think that the case is by no means decisive of the question now before us. There no fraud, collusion, bad faith, or improper motives appeared. The law required the contract to be let to the "lowest responsible bidder," and the commissioners were vested with a discretion in the premises which it was not shown that they had abused or had failed or refused to exer-

cise. The case therefore fell within the broad general
rule that mandamus will not lie to direct or control the
exercise of such discretion.

In State ex rel. v. Meyer, 142 Mo. App. 309, 126
S. W. 986, upon which appellants also rely, the board
of public works of the city of St. Joseph, in receiv-
ing bids for public work, were directed by the charter
to let such contracts to the "lowest and best bidder,"
the board having the right to reject all bids. The
relator's petition averred that his bid was the lowest
and best, alleged his compliance with all of the pro-
visions of the law and his readiness to enter into all
proper contracts required, asking that the board be
compelled to award him the contract. The lower court
sustained a demurrer to the alternative writ and its
action was affirmed by the Kansas City Court of Ap-
peals. This case likewise has nothing to take it out
of the general rule, viz., that the writ will not issue to
direct or control a discretion of public officers of this
character, when exercised fairly, impartially and in
good faith.

In State ex rel. v. Gregory, 83 Mo. 123, another
case upon which appellants rely, a writ of mandamus
was denied against the board of health to compel the
latter to issue and deliver to the relator a certificate
authorizing him to practice medicine in this State.
That this case is not authority for appellants appears
by reference to the opinion in State ex rel. v. Adcock,
supra, where the writ was sought for like purposes, and
a peremptory writ awarded upon the ground that where
the board's discretion was arbitrarily exercised or
manifestly abused its action was subject to review.

Other authorities to the same general effect cited
by appellants are not, in our judgment, controlling, for
the reasons above mentioned. They proceed under the
general doctrine above stated, and are not authority
for the proposition asserted by appellants that man-
damus will not lie even in a case of this character,

where, as the lower court found, the appellant members of the city council "did not act in good faith with the honest purpose of awarding said contract to the lowest and best bidder," did not "exercise the official discretion reposed in them in that behalf," but that they arbitrarily awarded the contract to appellant company "out of favoritism as a p?    reward for partisan, political services regardless 、 whether it was or was not the lowest and best; and that by so doing their act constituted a fraud on the relator," etc.

In Butler v. Darst, 68 W. Va. 493, 38 L. R. A. (N. S.) 653, where the writ was sought to compel commissioners of public printing to award the petitioner a certain contract, the peremptory writ was denied. The commissioners were required to award the contract "to the lowest responsible bidder." It appeared that after the contract had been awarded to another it was discovered that petitioner's bid was a lower bid; but the contract having been awarded, the commissioners were of the opinion that the matter had passed beyond their control and declined to rescind their action. There was no element of fraud, corruption, partiality, favoritism or bad faith in the case; and the decision is in accord with the general doctrine above stated. Accompanying the reported decision of this case in 38 L. R. A. (N. S.) supra, will be found extensive and valuable footnotes. And it is there said: "The general rule as deduced from the cases is that, in awarding contracts of this nature, public authorities are vested with discretion in determining who is the lowest and best bidder and their discretion will not be interfered with by the courts, even if erroneous, *provided it is based on a sound and reasonable discretion founded on facts and exercised in good faith, in the interest of the public, without collusion or fraud, nor corruptly nor from motives of personal favoritism, or ill will, and not abused.*" (Italics ours.)    Numerous authorities are cited in support thereof.

In Colorado Paving Co. v. Murphy, 78 Fed. 28, 37 L. R. A. 630, which was a suit in equity to compel the awarding of a contract to the plaintiff, it is said *arguendo* that it is well settled "that the lowest bidder cannot compel the issuance of a writ of mandamus to force the officers of a municipality to enter into a contract with it." In support of this are cited: State ex rel. v. McGrath, supra, and the following, which are referred to in the McGrath case, viz.: High's Extraordinary Legal Remedies, sec. 92; State ex rel. Phelan v. Board of Education, 24 Wis. 683; Commonwealth ex rel. v. Mitchell, 82 Pa. St. 343; also, Kelly v. Chicago, 82 Ills. 279; Douglass v. Commonwealth ex rel., 108 Pa. 559; and Madison v. Harbor Board, etc., 76 Md. 395.

A consideration of the cases thus cited, however, will disclose that they are not authority against the issuance of a writ under circumstances such as appear in the case before us. In none of them does it clearly appear that there was present fraud, collusion or bad faith. In State·ex rel. Phelan v. Board of Education, 24 Wis. 683, there was clearly nothing of this sort in the case. In Commonwealth ex rel. v. Mitchell, 82 Pa. St. 343, it was held that mandamus would not lie, *in the absence of clear proof of fraud or bad faith*. In Kelly v. Chicago, 82 Ills. 279, it was likewise held that the writ would not lie *in the absence of fraud*. In Douglass v. Commonwealth, 108 Pa. 559, it was said: *"If the authorities act in good faith*, though erroneously and indiscreetly, mandamus will not lie to compel them to modify or change their decision." (Italics ours.) And in Madison v. Harbor Board, 76 Md. 395, it was in like manner held that the decision of the Harbor Board of the city of Baltimore in awarding a contract for dredging, under a city ordinance, would not be reviewed by the court "unless it can be said that such public officers have been guilty of fraud in the exercise of their discretion."

The contention of appellants that the right of the city to reject any bid places the action of appellant members of the city council beyond review by the courts is sufficiently disposed of by what we have said above. What was said in Anderson v. Public Schools, 122 Mo. 61, 27 S. W. 610, relative to this question is clearly, we think, not here controlling or persuasive; for there the action was one at law to recover profits alleged to have been lost to the plaintiff by the refusal of the defendant school board to award him the contract, and proceeded upon the theory that a contractual relation arose from the advertisement for bids and the submission by plaintiff of the lowest bid. It was held that the advertisement for bids could not be considered as an offer or proposal such as to create a contractual relation by the submission of the lowest bid for doing the work; and that this was further made to appear by the fact that the right was reserved to reject any bid.

It is not altogether clear that relator's bid can be said to have been *rejected,* within the meaning of the provision in question. It is certain that it was not cast out, as not being a bid proper to be considered, but was retained for consideration as one of the only two bids submitted. But be this as it may, it is clear that appellants' position cannot be sustained on the ground that the right was reserved to reject ''any and all bids.'' Indeed, if this is to be construed as giving the city council the right to arbitrarily let a contract of this nature, regardless of the character of the bids submitted, and without limitation or qualification whatsoever, then the general provision requiring such contracts to be let to the ''lowest and best'' bidder becomes absolutely nugatory and meaningless. We think it cannot be doubted that these sections of the ordinances must be read together. And the general rule, to be deduced from the authorities above referred to, is to the effect that though the right to reject bids

be reserved, nevertheless the officers intrusted with the public duty in question are not free to act arbitrarily through caprice, favoritism, by collusion and in bad faith, thereby abusing the discretion reposed in them, or failing to exercise the same.

That where there is the right to reject "any and all bids," public officers have an official discretion with respect to the letting of public contracts appears from what is said in Reagan v. County Court, 226 Mo. 79, 125 S. W. 1140. But there is no contention here on the part of relator that the act in question was not one resting within the sound discretion of the city council, but that such discretion was grossly abused or in fact not exercised in the premises. The Reagan case is one of the same general character as State ex rel. v. Bourne, supra. The writ was denied upon the ground that no abuse of discretion appeared, for which, as it was said, "there may be remedy." The case proceeded in general upon the theory "that it was the imperative duty of the county court to award the contract to the highest bidder." Such was held not to be the case, under the statute there in question, but that an official discretion was reposed in the county court of which no abuse had been shown, for the reasons which will appear from a reading of the opinion.

In the case before us, while the awarding of such a contract was a matter resting within the sound discretion of the city council, nevertheless it clearly appears that the majority of that body did not exercise the discretion reposed in them at all. There are many other facts appearing in the case strongly supporting the findings of the trial court in the premises, which we have refrained from setting out. The report of the finance committee, set out in full above, and which was adopted, is sufficient upon its face to indicate the considerations which moved appellant members of the council who concurred in the recommendations there-

in contained and voted to adopt the report and award the contract accordingly. In this connection, it may be said that what was contained in the report relative to the prices which had in previous years been paid relator for doing the city printing appears to be unwarranted, in view of the fact that the evidence adduced respecting the awarding of such contracts in previous years showed no instance in which relator had received such award except when it was the lowest bidder.

It would indeed be a mockery to say that men charged with the performance of a public duty, such as were appellant members of the city council, could refuse to discharge their plain duty in the premises, and take refuge behind an official discretion reposed in them but which in fact they failed and refused to exercise.

In this connection, it should be said, however, that not only did aldermen Storr and Bender, out of regard to their duty as public servants, refuse to join their political colleagues in the action which they took, as appears above, but that mayor Dreyer, though here appearing as an appellant, did not sanction the same, but advised against it, saying that they "should place honor before politics."

IV. It is further urged that the relator has here "no contractual, vested or specific right that he can enforce in a court;" and that mandamus will not lie at his instance to compel the contract to be awarded to him. As to this appellant places great reliance upon Anderson v. School Board, supra. But that, as we have said above, was an action for the recovery of profits, upon the theory that a contractual relation arose from the advertisement for bids and the submission by plaintiff of the lowest bid. The case is not authority, we think, in support of appellant's contention that the relator has here no standing in court to main-

tain this proceeding. And the case of Coquard v. School Board, 46 Mo. App. 6, was an action of like character, and proceeded upon the same theory.

In Colorado Paving Co. v. Murphy, supra, cited by appellants, it was held that the complainant, the lowest responsible bidder for a contract for public work, had no such vested or absolute right to a compliance with the statutory provisions in question as to entitle him to maintain an injunction for their violation by public officials. And to like effect is U. S. Wood Preserving Co. v. Sundmaker, 186 Fed. 678. But these cases are not persuasive upon the proposition that the relator has no standing in court in a mandamus proceeding, such as is before us, particularly in view of what appears to be the well established rule in cases of this character.

Appellants' contention is, that the ordinance provision requiring contracts of this character to be let to the lowest and best bidder is intended for the benefit of the taxpayers of the city of Hannibal; that the duty sought to be enforced is a public duty and can be enforced only by a member or members of the body politic interested, as such, in its enforcement.

As to who may maintain a proceeding to compel the performance by public officers of a duty of the general character such as that here involved, it is said: "In some jurisdictions the proceedings must be instituted by the proper public officer, and a private individual is not entitled to the writ unless he has a special and peculiar interest in the enforcement of the right or the performance of the duty apart from his interest as one of the general public. In other jurisdictions, on the other hand, if the public right or duty affects the people at large or the people of a particular governmental district, or a particular class of people, such as voters or taxpayers, any one of the people at large or of the district affected, or any member of the class in question, may enforce the right or compel per

formance of the duty, regardless of any special or peculiar interest apart from that common to the general public. The true distinction seems to be that where the right or duty in question affects the State in its sovereign capacity, as distinguished from the people at large, the proceedings must be instituted by the proper public officer; but that if the general public as distinguished from the State in its sovereign capacity is affected, any member of the State may sue out the writ. However this may be, it is unquestionably the law that if a private individual has a special and peculiar interest in the enforcement of a public right or the performance of a public duty, apart from the interest that he has as a member of the people at large, he is entitled to protect and enforce it by mandamus.'' [26 Cyc. 401-404.]

It appears to be well established that, though the duty sought to be enforced is of a public character, nevertheless if the person applying for the writ has a special, peculiar interest in its performance, he may maintain the proceeding. That, in such instances, the action may proceed at the relation of such private person is well supported by the authorities. [See Robbins v. Ry. Co., 100 Me. 496; Weeks v. Smith et al., 81 Me. l. c. 544; Ayres v. State Auditors, 42 Mich. l. c. 429; Pumphrey v. Mayor, etc., 47 Md. 145; State ex rel. Tarr v. Mayor, etc., 32 Neb. 568; People v. Commissioners, etc., 4 Neb. l. c. 161; Windsor v. Polk County, 115 Iowa 738; State v. Commissioners, 39 Ohio St. Rep. 188; People v. Contracting Board, 46 Barb. (N. Y.) 254; State ex rel. v. Bourne, supra; 13 Ency. Pl. & Pr. 636; 26 Cyc. 401, 404.] But where a private citizen seeks to enforce the performance of an official duty to protect a private right, it must appear that he has a special interest in its performance, and that he will be injuriously affected if such duty be not performed. [See State ex rel. v. Wilson, 158 Mo. App. 120, 139 S. W. 705.]

"It is a principle of the law of mandamus that the relator must have a clear right to the performance of the act sought to be coerced by the mandate of the court." [State ex rel. v. Thomas, 245 Mo. l. c. 71, 149 S. W. 318.] But here we think the relator has such right. There were but two bidders; and, as the court found, these were the only possible bidders for the work in question. There was no possible ground for any just distinction to be made between them, other than as to price, by reason whereof the city council could, in the exercise of a sound discretion, find one to be a better bid than the other, though vastly higher.

What was said in State ex rel. v. Bourne, supra, applies here with much force. Indeed the facts of this case make it a much stronger one of palpable abuse of discretion, or arbitrary refusal to exercise the same, than the Bourne case, where the peremptory writ was awarded in favor of a private relator.

Entertaining these views, we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered. *Nortoni, J.,* concurs; *Reynolds, P. J.,* dissents, expressing his views in a separate opinion.

## DISSENTING OPINION.

REYNOLDS, P. J.—I am unable to concur in the opinion of the majority of the court in this case, and dissent on two grounds.

I do not think that by mandamus we have the power to command the mayor and board of aldermen of the city of Hannibal, vested with discretion in the matter of passing upon bids for the city printing, in the exercise of that discretion, and particularly in directing them, as does the order issued by the learned trial court, to award the contract of printing to the relator, "and enter an order of record in the record and proceedings of said council, showing that said con-

tract and printing was awarded to relator at the rates named in the said bid, and that a contract was ordered executed accordingly, and that a rejection has been made of the bid of defendant Courier-Post Publishing Company and accept from relator a good and sufficient bond, as required by law and ordinance, and enter into a contract in writing with relator in accordance with its bid and as required by law and ordinance.'' I think that making such an order is such a clear case of usurping not only the power of discretion lodged in the city authorities but in attempting as a court to enter up orders which can only be done by the municipal body when duly convened, that I am unwilling to agree that we can go that far in any case. The general law on this is stated by our Supreme Court in State ex rel. Best et al. v. Jones et al., 155 Mo. 571, l. c. 576, 56 S. W. 307, thus: ''Where a discretion is vested in a public officer, the courts will by mandamus compel the officer to exercise that discretion, but will not direct how it shall be exercised or what conclusion or judgment shall be reached.'' [See, also, 26 Cyc., p. 158, par. 3; also page 188.] This ruling of our Supreme Court in the above case is its latest on the matter and I think it not only controlling but conclusive.

In a measure this case before us has become a moot case, for by the terms of the bid the contract was to be for one year and that year will have expired in August of this year; in fact, on respondent setting that up, we, on his motion, advanced the hearing of this appeal; but the principle here involved is of sufficient importance to demand that the case be correctly adjudged.

There can be no two views, to my mind, of the absolute impropriety and fallaciousness, to use no harsher terms, of one of the reasons advanced by the committee of the city council and adopted by the majority of that body, for rejection of the one bid and

acceptance of the other, that is to say, a purely political, party, reason. That reason is not only inherently unsound but proceeds upon a very mistaken idea of party duty. Constituted as parties are in our country, divided into parties as our people are, it is but human nature that the representatives of a party, vested with power, should be inclined to favor their own party. But this must only be done in a lawful and fair way. If the idea is to advance the interests of the party, we should be mindful of the maxim, if it may be classed as such, "He serves his party best who serves his country best." Surely nothing could advance the interests of a party more effectively than that its representatives, when in power, are economical and wise in the use and application of the people's money, for it is the money of the people that is to be here paid out, and no more of it should be expended than reasonable and absolutely necessary to secure adequate and efficient results. So that entirely lacking in sympathy with the spirit which animated this body, as set out in the resolutions drawn up by its finance committee, I would not hesitate to undo its work, and direct it to make the award to the relator, if I thought we as a court have power to do that.

However much we may condemn the motive which in part governed the officers clothed with discretion in the exercise of that discretion, absent fraud, we cannot, as a court, in passing upon that act, afford to violate settled principles which lie at the very foundation of the exercise of our power in awarding mandamus, and substitute our own discretion for theirs. To do that is to commit a wrong on our part amounting to judicial usurpation. As said by our Supreme Court in State ex rel. Best v. Jones, supra, the court will command the exercise of discretion, but will not direct how it shall be exercised. Nor do I think it entirely within the facts as disclosed by the testimony, to say that the political motive was the sole motive.

When we can infer a right motive we should do so, if motives are to be considered.

If the act of the city authorities rested on one reason alone, it could not be justified, not holding, however, that we have the power, by mandamus, to undo their act.

But there is more reason given in the report of the committee and the action of the council than the utterly untenable political reason. It is specifically recited in the report of the committee and as adopted by the council, that "In all advertising one must consider the medium used. In the matter of the city publication we want the greatest publicity; for complete information of the council's action is due all the people. Such being the case, we must consider which of the two bids is the lowest and best, not from the mere amount stated in the bids, and we find, in our judgment, that, taking into consideration all the points of view, that the Courier-Post is the best medium to convey this information to the citizens and has the largest circulation, we believe, and the Courier-Post's is the lowest and best bid." In so far as this reason is concerned, the award to the Courier-Post was entirely within the limit of power of the council. Acting on that ground, it cannot be said that its discretion was unduly exercised and is subject to control by the courts, either by mandamus or in any other proceeding. Granting that the council was also governed by a wrong and improper motive in making this award, is that to overturn its action when also founded on a lawful reason? No one challenges its right in its discretion to make an award. Is that right to be destroyed because one of the motives was wrong? I cannot bring myself to believe that one of the motives being wrong destroys the power to exercise discretion in making the selection.

In Loewenberg v. DeVoigne, 145 Mo. App. 710, 123 S. W. 99, we held that the motive with which an act

was done, whether malicious or not, gave one no cause of action at law for damages, provided the act done was within the power of the party acting; that the state of mind of the person doing the act complained of does not affect the right to do it. Said Lord Halsbury, L. C., in Bradford Corporation v. Pickles, 1 App. Cas. (1895) 587, l. c. 594, "If it was a lawful act, however ill the motive might be, he had a right to do it. If it was an unlawful act, however good his motive might be, he would have no right to do it. Motives and intentions . . . are absolutely irrelevant." In Allen v. Flood, 1 App. Cas. (1898) 1, l. c. 46, Mr. Justice WILLS, citing the above case, said: "A good motive does not increase, a bad motive does not diminish, the right to do them." So it was said by our court, Judge GOODE writing the opinion, in Holke v. Herman, 87 Mo. App. 125, l. c. 141. So our Supreme Court held in Anderson v. Public Schools, 122 Mo. 61, l. c. 67, 27 S. W. 610, and Glencoe Land & Gravel Co. v. Hudson Bros. Commission Co., 138 Mo. 439, l. c. 445, 40 S. W. 93.

The questions involved in our right to award mandamus here, are: Had the city authorities power to act upon their discretion? Have they so acted? Both these questions must be answered in the affirmative. So answered, the matter ends. The motives upon which they acted, absent fraud, have nothing to do with the act, present the right to act. The exercise of discretion may stand, if in exercising it the council was within its right, however wrong its motive, absent fraud.

It is said that the trial court found as a matter of fact that there was very little difference in the circulation of the two papers, and that as mediums of advertising to the public one was as good as the other. It is true that the finding of the court on the facts in the mandamus case is accepted by the appellate court and controls, if supported by substantial evi-

dence. But we are not bound by his conclusions on the facts. The trouble with the application of that rule here would be to allow the discretion of the trial judge, if we affirm him, to be substituted for the discretion which is lodged by law in the city authorities of the city of Hannibal, for the council in its discretion found the higher bid the best, and for any such substitution I find no warrant whatever. The council assigns as a reason for selecting the Courier-Post, that it considered it the better medium. It does appear by the evidence that in the city of Hannibal, with a population of about 18,500, or say 3700, or even 4625, families, the Courier-Post has about 2350 subscribers and the Journal about 1550, the former published daily, except Sundays, the latter daily, except Sundays and holidays.

The learned trial judge, it is true, found, as set out by my learned colleague, that both the printing companies were well equipped to do the work, and that each is of large and general circulation and efficient for the purpose of carrying notice to the citizens of Hannibal. But that ignores the difference in circulation, which the evidence reveals to be decidedly in favor of the Courier-Post. The learned trial court made no special finding on that. It is true his finding is not under the statute, and as I said in my dissenting opinion in Lesan Advertising Co. v. Castleman, 165 Mo. App. 575, l. c. 584 et seq., 148 S. W. 433, now pending on certification in the Supreme Court, has only the effect of a general finding. While the case is referred to in Barton Lumber Co. v. Gibson, 178 Mo. App. 699, 161 S. W. 357, and Skinner-Kennedy Stationery Co. v. Lammert Furniture Co., 182 Mo. App. 549, and to both of which I agreed, the point involved in these cases was not that upon which I dissented in the Lesan case. There I dissented to the proposition that a finding of fact by the trial court, none having been requested, had not the effect of one made under the statute. I still adhere to that view. The conclusion of

the majority in the Lesan case makes the failure to find on the fact of circulation error.

That this fact of larger circulation figures conspicuously in the reason for the award, is clear. It is a sound one, for the lowest bidder is not always the best (2 Dillon, Municipal Corporations (5 Ed.), sec. 811; High on Extraordinary Legal Remedies (3 Ed.), sec. 92), and the fact of a larger circulation is generally recognized as a good reason for charging a higher price for advertising space.

I think the doctrine laid down by Mr. High is the better doctrine as to all cases of this character and is the one which has the support of an almost uniform line of authority, namely: "That the duties of officers intrusted with the letting of contracts for works of public improvement to the lowest bidder are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus." Mr. High further says: "And the true theory of all statutes requiring the letting of such contracts to the lowest bidder is that they are designed for the benefit and protection of the public, rather than for that of the bidders, and that they confer no absolute right upon a bidder to enforce the letting of the contract by mandamus after it has already been awarded to another." [High's Extraordinary Legal Remedies (3 Ed.), sec. 92.] That is the rule announced by our Supreme Court in State ex rel. v. McGrath, 91 Mo. 386; 3 S. W. 846; Anderson v. Public Schools, supra; Glencoe Land & Gravel Co. v. Hudson Bros. Commission Co., supra; State ex rel. Best v. Jones, supra.

In Anderson v. Public Schools, supra, it is said (l. c. 67): "No claim is advanced in the petition looking to a recovery for fraud or deceit in making the proposals for bids. It is indeed asserted that the defendant rejected plaintiffs' bid, 'without cause, arbitrarily and capriciously, through favoritism and bias.'

But if defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause.'' It is true that this cause of Anderson v. Public Schools, supra, was not a mandamus but an action to recover damages for loss of the contract, and in that respect differs from the case before us, but the principle announced in it and contained in the language which we quote is as applicable here as there, and follows the general line of authority on mandamus. It is to be observed that in the Anderson case there was a demurrer to the petition which asserted that the plaintiffs' bid had been rejected ''without cause, arbitrarily and capriciously, through favoritism and bias.'' The demurrer admitted these averments. Even with these in, our Supreme Court held that it was not sufficient to overcome the discretionary power vested in the awarding body. It is to be observed in the case at bar, that while the word ''fraud'' is used in the petition and writ, there is no evidence of fraud; nor is there any pretense of any corrupt or even improper act on the part of the Courier-Post, who is the one who is to suffer for the benefit of its competitor; it is enjoined from claiming under the award. Nor is there any corruption, in the sense of pecuniary reward or benefit to the members of the city government shown to be present on their part. The action of the court rests on their act being without cause, arbitrary, capricious and through favoritism and bias. That is the most that can be said of one of the causes assigned by this city council for the rejection and the awarding of the bid to one paper rather than to the other. It is distinctly held in this Anderson case that with the presence of these factors the discretionary power lodged in the award-

ing body is not taken away. So says the Kansas City Court of Appeals in State ex rel. Montfort v. Meier, 142 Mo. App. 309, 126 S. W. 986, that court saying that the discretion being vested in the board to make an award, the courts would not interfere.

Reporting Anderson v. Public Schools, supra, in full, in 26 L. R. A. 707, many cases are cited to the effect that where a discretion is lodged in the body as to the rejection or reception of bids that the lowest bidder is not entitled to mandamus or injunction on failure to receive the award and cannot recover damages for failure to execute the contract, and it is said by the compiler (p. 708) that the cases cited fully sustain Anderson v. St. Louis Board Public Schools that there is no cause of action even if the board acted capriciously through favoritism.

In his work on Municipal Corporations, the late Judge JOHN F. DILLON has said (vol. 1, sec. 242, 5 Ed.):

"Power to do an act is often conferred upon municipal corporations, in general terms, without being accompanied by any *prescribed mode* of exercising it. In such cases the common council, or governing body, necessarily have, to a greater or less extent, a *discretion as to the manner* in which the power shall be used. This discretion, where it is conferred or exists, cannot be judicially interfered with or questioned except where the power is exceeded or fraud is imputed and shown, or there is a manifest invasion of private right. Thus, where the law or charter confers upon the *city council, or local Legislature, power to determine upon the expediency or necessity of measures relating to the local government,* their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such case the decision of the proper corporate body is, in the absence of fraud, final and

conclusive, unless they transcended their powers.''
(Italics those of Judge DILLON.)

Further along in the same section Judge DILLON
has said:

''So, in the absence of fraud, the court refused to
interfere by injunction with the action of the city coun-
cil in agreeing to rent a room for city purposes for
twenty years and to pay for the same in advance.''
Moses v. Risdon, 46 Iowa 251, is cited in support of
this. Judge DILLON repeats—section 811—that ''in the
absence of fraud, or manifest abuse, the courts will
not interfere with the exercise of the official discretion
of an officer or board entrusted with the duty of award-
ing a contract.''

In Moses v. Risdon, above cited, it is said by the
court that the petition does not charge actual fraud
upon the part of the city council; it does charge that
the issuance of the scrip would operate as a fraud
upon the rights of the plaintiff and other taxpayers.
Says the court (p. 253), ''In the absence of actual fraud,
courts cannot interfere with the judgment and discre-
tion of city councils in determining what are and what
are not suitable rooms for the purposes of the city and
its officers.''

While in the case at bar it is averred that the
act of making this award was fraudulent, as before
said, there is not a particle of proof of any fraud in
the matter, using the word fraud, as it must be used,
in its technical sense. The most that can be said
against the action of the city council in preferring the
one paper to the other as the medium of publication,
is that it was governed by favoritism, partiality or
prejudice, but none of these constitute fraud in the
legal sense of that term, and in the sense in which that
term is used by Judge DILLON, nor can it be said, in
the light of the facts that there was a manifest abuse
of the power. The trial court himself found that both
competitors were well equipped to do the work and

either would reach the public. Judge DILLON in his work above referred to also says (sec. 1488): ''The general rule is this: If the inferior tribunal, corporate body, or public agent or officer has a discretion, and acts and exercises it, this discretion cannot be controlled by mandamus.'' He has further said (sec. 1482): ''A writ of injunction belongs solely to a court of equity, and usually issues to prevent the doing of some specific act. Where mandamus is the appropriate remedy, it cannot be substituted by a bill in equity praying an injunction, as, for example, an injunction to compel a municipality to levy a tax to pay a judgment against it,'' the author holding that mandamus and injunction are in their nature different remedies and in general are not concurrent or interchangeable.

In a way, the city council or governing body of the city is properly classified as one of the three great divisions of governmental power under our Constitution, that is to say pertains to the legislative branch of government, and as held in Albright v. Fisher, 164 Mo. 56, 64 S. W. 106, it is not within the power of the courts, as part of the judicial system of the State, to interfere in the functions of the legislative bodies of the State. Our court has no more power, in my judgment, to tell the city council of a given city what ordinances it shall pass or not pass, as here attempted, or what bids it shall or shall not accept, than it has power to tell the General Assembly of the State what laws it shall or shall not pass.

In State ex rel. Union Fuel Co. v. City of Lincoln, 94 N. W. Rep. 719, the Supreme Court of Nebraska held that the crucial question in determining cases of this kind is whether the city council in awarding the contract acted under a discretionary power invested in it or wholly ministerially, and it is held that where they are invested with a discretionary power their acts are not to be subject to the control of the courts.

I know that there are some cases that seem to go further than this and to hold that when the discretionary power is used through favoritism or party bias, it can be controlled by the courts. But I do not think that these rest on a solid foundation or that the weight of authority in our own State, certainly the weight of authority outside of our State, lies in that direction.

Reagan v. County Court of Iron County, 226 Mo. 79, 125 S. W. 1140, one of the latest cases before our Supreme Court on the question of interfering with the discretion lodged in a county court, I think is distinctly against the contention of the relator here. It is true that in the Reagen case there was no question of good faith involved, but the action was brought on the distinct claim of the violation of law in choosing one who offered a lower rate of interest (in point of fact hardly one-half of the rate offered by the other), rather than one who had offered a higher rate as county depositary, and while Judge GRAVES, in delivering the opinion does say that there is no charge of bias in the case, he most certainly does not decide that the presence of bias would have authorized the court to interfere by mandamus.

I do not think that the case of State ex rel. v. Public Schools, 134 Mo. 296, 35 S. W. 617, controls this case. The facts are entirely different. Nor do I understand how that decision can be reconciled with the later decision in State ex rel. Jones et al. v. Best et al., supra, where, as before noted, it is said that discretion being vested in a public officer, the courts may, by mandamus, compel its exercise, but cannot direct how it shall be exercised. That is just what the Supreme Court did in State ex rel. v. Public Schools and what is here proposed to be done.

That also is the trouble with the decision of the Springfield Court of Appeals in State ex rel. Bank v. Bourne, 151 Mo. App. 104, 131 S. W. 896. The court there, as did the circuit court here, striking down the

act of the public body, an act done within its discretionary power, substituted what in the court's discretion, it considered to be proper action. So I do not consider either of these controlling in the face of what is said by the Supreme Court in State ex rel. Jones v. Best, supra. Moreover, in the Public School case the action was by citizens having, as citizens, an interest with, bringing the action for, the benefit of their fellow citizens, and was not at the relation of one claiming a personal interest, as here, and seeking to enforce it. Here no citizens appear as such; no taxpayer, as such, is complaining.

The case of Colorado Paving Co. v. Murphy, 49 U. S. App. 17, 37 L. R. A. 630, presents many features in common with the case at bar. It was an action by the contractor for an injunction, seeking to prevent the award of a contract to a party to whom it had been awarded, the plaintiff or petitioner claiming that he in fact was a lower bidder and that the contract had been let to another party through the connivance and as a result of a conspiracy between that party and other contracting firms and with members of the Denver city council. While the case before us is denominated mandamus, it, in a measure, and as we think improperly, combines features of an injunction in that it asks an injunction restraining the city authorities of Hannibal from awarding the contract to the Courier-Post and to enjoin the latter company from accepting and acting under the contract, and so the trial court did. Notwithstanding the difference in the form, I think the principle is as applicable to the one as to the other. In the Colorado Paving Company case, Judge SANBORN, who wrote the opinion for the United States Circuit Court of Appeals of this circuit, says, that in spite of affidavits denying it, the evidence tended to show an agreement between the successful bidder and certain other bidders to divide profits; in other words, a fraudulent bid. Present these facts, Judge

SANBORN says that the first question presented is "has the lowest but unsuccessful bidder for municipal work any such vested right to or interest in the contract for it as will enable him to maintain a suit to compel its award to him, and to enjoin the successful bidder and the municipality from entering into a contract for the performance of the work because that contract has been awarded to a higher bidder in violation of the usual provision in city charters that such work shall be let to the lowest reliable and responsible bidder? In other words, has the lowest bidder the legal capacity to maintain such a suit as that at bar? That taxpayers, whose taxes are to be increased and whose property is to be depreciated in value by the fraudulent or arbitrary violation of this provision by the officers of a municipality may maintain a bill to enjoin their proposed action, is a proposition now too well settled to admit of question." After citing many authorities Judge SANBORN says: "These suits, however, stand upon the ground that the statutes on which they are based are enacted, and the duties there specified were imposed upon the public officers, for the express benefit of the property holders and taxpayers who bring the suits. The appellee (plaintiff) pays no taxes for this paving. He has no property that will be injured by the violation of the provisions of the charter relied upon, and no one who has is here to complain of the violation. So far as the purpose of its enactment is concerned, the complainant is a stranger to the statute—one whose interests were not considered or intended to be conserved by its enactment. He is a mere bidder for some of the public works of this city, a contractor, or one who desires to be a contractor. His interest and that of his class, the contractors with municipalities for public work, is to get the highest price for their work and materials. It is obvious that this statute was not enacted for their benefit." After further discussion of the objects of the

statute requiring competitive bidding for public works, Judge SANBORN continues: "It is upon this principle that it is now settled by the great weight of authority that the lowest bidder cannot compel the issue of a writ of mandamus to force the officers of the municipality to enter into a contract with him," citing a number of cases; "and the courts hold that he cannot maintain an action at law for damages for their refusal to enter into the contract. . . . This principle is as fatal to a suit in equity as to an action at law." Yet this is the precise position here occupied by this relator. This decision by Judge SANBORN is in line with the decision of our Supreme Court in the cases heretofore cited, and to my mind is conclusive against the right of this relator to maintain this action.

In United States Wood Preserving Co. v. Sundmaker, 186 Fed. 678, the Circuit Court of Appeals of the sixth circuit held that laws providing for the letting of public contracts to the lowest and best bidder are enacted for the benefit of property holders and taxpayers and not for the benefit of and to enrich bidders and are to be executed with sole reference to the public interest.

In these cases, too, I find my second reason which prevents me from agreeing to the conclusion reached in this case. That is, I do not think the relator here has such a standing as entitles it to maintain this action. It is endeavoring to enforce a right, personal to itself, and in which, so far as the public is concerned, and so far as concerns any allegations contained in its petition, or in the writ, do not concern the public. The relator here is not applying for relief as a citizen or as a taxpayer, but in its own interest, and it is to be again noted and emphasized that no citizen nor any taxpayer of the city of Hannibal has appeared or intervened in this matter. I am very decidedly of the opinion that the relator's personal interest does not entitle it to the benefit of the exercise of the high prerogative

writ of mandamus by the court in its favor to enforce a personal right. For these reasons I think that the judgment of the circuit court should be reversed.

As will appear by what I have written, I have none but words of condemnation for public servants who will allow their political bias to control in the performance of a duty they owe to all the people. But here I consider principles involved that cannot be ignored without resulting in far reaching injury. Those are, first, the courts cannot by mandamus, control the discretion of this public body; second, they will not, in a case such as here presented, act on the claim of a disappointed bidder.

My conclusion is that this action cannot be maintained, that the alternative writ should be vacated and a permanent writ denied.