THE STATE EX REL. EDMOND MCWILLIAMS, Guardian of Person and Estate of WILLIAM N. PRICE, v. FRANK W. ARMSTRONG, Judge of Probate Court of Clinton County.—9 S. W. (2d) 600.

Court en Banc, October 2, 1928.

*Pross T. Cross & Son* and *R. H. Musser* for relator.

*Daniel H. Frost* and *W. T. Harbison* for respondent.

GENTRY, J.—This is a mandamus proceeding against Hon. Frank W. Armstrong, Judge of the Probate Court of Clinton County.  In

the alternative writ, the official·capacity of the respondent is alleged; and it is also alleged that on September 26, 1901, William N. Price, a resident of that county, was by the probate court of that county duly adjudged to be a person of unsound mind, and that relator Edmond McWilliams was appointed his guardian. That relator gave bond, received a small sum of money due said ward and continued to act as such guardian until November, 1927, during most of which time said Price was a patient at State Hospital No. 2 at St. Joseph. That Clinton County paid. his expenses at that institution after his personal estate had been exhausted, and that said ward is now being kept in the Clinton County Home, also known as the County Alms House. That there is now due said ward $11,976 from the estate of a relative who died in New Jersey; and that relator has tendered to respondent, as probate judge, an additional bond in the sum of $24,000, in proper form and with good and sufficient sureties, all residents of that county, which bond has been duly acknowledged before a notary public, and sworn statements of such sureties of their solvency attached thereto. That respondent, as probate judge, has refused to approve said bond, but that on November 8, 1927, by an order of record, appointed one S. D. Reynolds as guardian of said Price without any authority so to do. It is further stated that relator applied to the circuit court of that county and obtained a provisional writ of prohibition, afterwards made absolute, directing and requiring respondent from further pursuing his appointment of said Reynolds, but that said prohibition case has been taken on appeal to the Court of Appeals. It is also alleged that respondent will further delay to approve said bond, and that by reason of such neglect and refusal, relator and his ward will suffer, and the representative of the estate in New Jersey will refuse to pay said money until a sufficient bond has been approved and certificate thereof furnished.

In his return, respondent admitted his official capacity and his refusal to approve said additional bond; he also admitted that said Price was duly adjudged insane in 1901, that he was for many years an inmate of State Hospital No. 2, that in 1923 he was removed to the County Home and that said sum of money is now due him from the estate of said New Jersey relative. It was then alleged that relator McWilliams, at the time he was appointed guardian, was clerk of the county court of that county and therefore disqualified from holding or accepting of such appointment, and that by reason thereof his appointment was a nullity. It was further alleged that a large sum of money was. due the county from the estate of said ward, that relator made five settlements, the last being a final settlement, that he mismanaged the estate and that in January, 1906, on the petition of the prosecuting attorney of. that county, the court .made

an order of record directing relator to pay the balance on hand of $67 to the county treasurer of that county, which was done and relator was discharged. He admitted that notice of final settlement and resignation was not published, but alleged that said relator never appeared in said court again for a period of twenty-three years. It was further alleged that the probate court accepted final settlement, and that there was no necessity for the appointment of another guardian, because of the fact that there was no money belonging to said estate. That relator did not appeal from the order discharging him, and that relator did not attempt to discharge any of the duties of guardian, but abandoned the same and is therefore estopped from asserting his right to act as guardian. Respondent admitted that on November 8, 1927, S. D. Reynolds, a competent person and resident of that county, was duly appointed guardian of said insane ward and also admitted that the prohibition case had been appealed from the Circuit Court of Clinton County to the Court of Appeals.

To this return, relator has filed a demurrer, assigning various reasons therein.

I. It is insisted by counsel for respondent that relator was never qualified to serve as guardian owing to the fact that he was a clerk of the county court at the time of his appointment. Whether his appointment was proper or not need not be considered, since it is admitted that he accepted of the trust and continued to act as guardian for a number of years and no effort was made by anyone to remove him on account of the official position that he then held. It being conceded that he was appointed guardian and gave bond, such appointment is a valid one and cannot be questioned nor attacked collaterally. [Richardson v. Busch, 198 Mo. l. c. 180; Green v. Tittman, 124 Mo. l. c. 375; Brawford v. Wolfe, 103 Mo. 395; Johnson v. Beazley, 65 Mo. l. c. 264; Riley v. McCord, 24 Mo. l. c. 269; Cox v. Boyce, 152 Mo. l. c. 582; 1 Woerner's Am. Law of Adm., sec. 180.]

II. It is stated in the return of respondent that relator mismanaged the estate of which he was guardian, and such alleged mismanagement appears to be one of the reasons relied upon by respondent in justification of his action in the appointment of another guardian. This court cannot in this proceeding attempt to pass on the matters involved in the five settlements of relator, made in the probate court. Such settlements received the approval of that court, and we must presume that such approval was proper. In a proceeding such as this, even if we were disposed to

pass on such a question at this late date, we could not do so upon the mere statement of respondent, who was not judge of the probate court at the time said settlements were made. The probate court having exclusive jurisdiction of the administration of estates it must be presumed to have made the proper allowances and entered the proper orders. The present statute, Section 492, Revised Statutes 1919, empowers the probate court to remove a guardian "for neglect of duty, misconduct or mismanagement, or disobedience to any lawful order." [Ex parte Zorn, 241 Mo. l. c. 271.] No complaint having been made to the probate court of the mismanagement by relator and no order of that character having been made in relation thereto, it is reasonable to presume that relator was not guilty of mismanagement of said estate.

It may be said, however, that the fact that the prosecuting attorney of the county filed a petition with the probate court asking that the balance on hand belonging to said ward be paid to the county treasurer and the fact that the probate court ordered such sum paid to the county treasurer is no evidence whatever of mismanagement on the part of relator.

III. It is earnestly insisted that the relator is now estopped from claiming that he is still guardian. We have been cited to no authority that sustains this position and we know of no such authority. The final settlement was made in January, 1906, and at that time there were four ways by which the guardianship of an insane person could be terminated: (1) by the death of the ward, Section 3691, Revised Statutes 1889; (2) where the ward has been restored to right mind, Section 3689, Revised Statutes 1889; (3) by removal by the probate court for misconduct or mismanagement, Section 3692, Revised Statutes 1889; and (4) by the resignation of the guardian, Section 3703, Revised Statutes 1889. In the last-named section, which is the only one that we can consider, it is provided that if a guardian publish for four weeks in some newspaper published in the county a notice of his intention to apply to the probate court to resign his guardianship, and the court, on proof of such publication, shall believe that he should be permitted to resign, the court shall so order, and appoint another guardian, etc. It will therefore be seen that the fact that the funds of this ward were paid out according to the order of the probate court did not operate as a resignation by the guardian, neither did the order of the probate court entering his discharge. It is conceded that he did not file any resignation with the probate judge, neither did he make proof of publication of the notice of his intention to resign, nor was such notice published in any newspaper. None

of the elements necessary to constitute such resignation being present, it cannot be said that relator resigned his guardianship.

In discussing the subject of the removal of a guardian, this court, through Judge BROWN, in State ex rel. v. Bird, 253 Mo. l. c. 581, said, "It is a well-recognized rule that the probate court has no power to remove a guardian except in cases relating to the faithful performance of his trust, or to the sufficiency of the security given him. And where the statute enumerates the grounds on which guardians may be removed, a removal on grounds not enumerated is unauthorized." [21 Cyc. p. 53.] We therefore hold that relator did not resign as guardian and that the probate court had no authority to discharge him; hence its order to that effect is void.

IV. It is claimed by respondent that relator abandoned the duties of guardian by making no further settlements, by discharging no duties as guardian and by asserting no claim to said guardianship between 1906 and 1927. As the relator paid out all of his ward's money, under order of the probate court, and as he received no other money or property belonging to said ward during that time, there was no occasion for him to make settlements in that court. We cannot see how there was any abandonment of the guardianship nor any neglect of the guardian's duties, as it is conceded that the ward was first placed in the State Hospital at St. Joseph and later in the Clinton County Home, in both of which institutions he was properly cared for. Relator cannot be held responsible for failure to better care for the ward owing to the fact that the ward's estate has been exhausted. It sometimes happens that the estate of an insane person is exhausted and later a substantial sum becomes due him by inheritance or otherwise. Our law very wisely makes no provision for the discharge of such guardian simply because his estate has been legitimately consumed. In speaking of the needs of an insane person, Judge VALLIANT in behalf of this court, said, "An insane person needs a guardian of his person even though he have no property." [Redmond v. Railroad, 225 Mo. l. c. 731.]

V. As a final contention, respondent denies that mandamus is the proper remedy. It is true that mandamus will not issue in a doubtful case, and it is also true that mandamus will not issue ordinarily for the purpose of directing an inferior court how it should proceed; that such procedure must be according to the discretion of the inferior court. Yet it is also true that discretion must always be reasonably exercised, and as to whether or not it is reasonably exercised is a question for the court to which ap-

plication for mandamus is made. [State ex rel. v. Adcock, 206 Mo. l. c. 556; State ex rel. v. Dreyer, 183 Mo. App. 481; 2 Bailey on Mandamus, sec. 201; Ferris on Extraordinary Legal Remedies, sec. 298.] This case appeals to us as an extraordinary one, demanding the exercise of that discretion recognized by courts and text-writers. We cannot shut our eyes to the circumstances disclosed in this record— it is evidently a contest between two gentlemen who have been appointed guardian of this unfortunate Missouri citizen. If this controversy is permitted to go on much longer, the poor old afflicted man will probably pass on to the great beyond without getting any benefit from the New Jersey relative's estate. Proceedings for the appointment of the guardian for such a person should be conducted in a way to conserve the estate and to aid such unfortunate rather than to be compensation for one legally entrusted with the care thereof. It is a circumstance worthy of mention that the record wholly fails to show that either the respondent, or any of his predecessors, or anyone else, ever complained of mismanagement of this estate until it was learned that a substantial sum was due the ward from an estate of a distant relative. Such a controversy as this is conducted for a purpose other than the benefit to be derived by the afflicted ward.

There being no question about the legality of the appointment of relator as guardian, and no record of his resignation, nor the termination of his guardianship, nor the sufficiency of the additional bond, he is entitled to continue as guardian.

The alternative writ of mandamus is therefore made permanent, and respondent is commanded, without delay, to approve the additional bond of relator, make an order of record to that effect and furnish relator with copies of his appointment, original bond, additional bond, and the order approving same, all duly certified to according to the act of Congress. All concur; *Blair, J.*, in the result.