STATE of Missouri ex rel. William J. KOMAN, Relator, Respondent,

v.

TOWN & CAMPUS OF ALABAMA, INC., et al., Respondents;

Town & Campus of Alabama, Inc., a Missouri Corporation, and Joseph O. Morrissey, Respondents, Appellants.

No. 33093.

St. Louis Court of Appeals. Missouri.

Feb. 18, 1969.

1965. The stock certificate was offered and received in evidence without objection. Moreover, appellants' motion for new trial is silent as to such contention. This issue cannot be raised for the first time at this stage of these proceedings and under the circumstances is not properly for our ruling on this appeal. Civil Rule 83.13, V.A.M.R.

Those allegations of error properly before us are: (1) the evidence was, to quote from appellants' brief, "vague, insubstantial, and too indefinite" to support the trial court's findings and order; and (2) any agreement for the issuance of stock to relator was between relator and Morrissey alone, never ratified or otherwise approved by the board of directors or the stockholders of appellant corporation and as such is not binding upon it. The evidence bearing upon these issues follows.

It is undisputed the corporate appellant was organized under the laws of this state and that Koman's certificate was issued to him without the payment of any money and bore Morrissey's signature as President and Koman's as Secretary. It is likewise accepted that the corporate appellant was one of several corporations in which Mr. Morrissey had a major interest and which were organized to provide housing for students, faculty members and other people living in cities where colleges or universities were located. In addition to these items of evidence one of the exhibits shows Morrissey received 522 shares of common stock in appellant corporation on the same date as the relator's shares were issued.

Koman's testimony was that his agreement with Morrissey was that he was to receive 10% of the latter's interest in the corporate appellant in return for services performed. His further testimony was that he "set up the complete disbursement of the job"; that he "put a lot of effort in organizing this company and putting this thing together"; that he worked with the lender to help Morrissey secure the financing; and that "I felt I ran and worked the whole thing; completely bid out the job, complete-

Armstrong, Teasdale, Kramer & Vaughan, John J. Cole, Fred Leicht, Jr., St. Louis, for appellants.

Jesse E. Bishop, Michael J. Aubuchon, St. Louis, for respondent.

BRADY, Commissioner.

This is a mandamus proceeding originating in the trial court. In that forum the appellants here were labeled "respondents" and the "relator" in the trial court is here the "respondent". To avoid confusion we will refer to Mr. Koman by name or sometimes as "relator" and to the corporate and individual respondents by name or as "appellants".

The determinative issue raised by relator's petition for the trial court's alternative writ of mandamus, appellants' return thereto and relator's reply was whether relator's certificate for 58 shares of the capital stock of appellant corporation was legally issued against a contention such certificate was void under the provisions of § 351.160, RSMo 1959, V.A.M.S., forbidding the issuance of shares of stock except when paid for by money, property actually received, or "labor done".

Before passing to the issues properly before us we must note appellants' brief contains the allegation of error relator's stock certificate was void because it was issued prior to the incorporation of the corporate appellant. It appears from Exhibit 2 the Certificate of Incorporation was dated June 15, 1965, while Koman's stock certificate bears the date of June 9,

ly worked with him on it acquiring financing. We handled the whole thing." It also appeared from Morrissey's testimony given later in the trial that Koman did investigate the possibilities of a piece of property in Tuscaloosa but it was not the property finally used.

Morrissey testified for appellants that Koman had been working for various corporations in which he was the principal stockholder for about four years prior to 1965. His salary was $600.00 per month plus automobile and expenses. In January of 1965 this sum was increased to $18,000.-00 per year. According to Morrissey this increase was due to the fact Koman was not going to play professional football any longer and would devote his full time to the work of these corporations.

Morrissey admitted that he asked Koman to investigate the properties they were going to acquire in connection with the development of the appellant corporation. His further testimony in this regard was that Koman's duties with respect to appellant corporation were that: "He was accountable — supposed to be accountable for the acquiring of the bids and the overall construction phase of the project from the initial stage of construction to completion."

With respect to the issuance of the stock certificate here in question to Koman, Morrissey's testimony was the stock in the appellant corporation was sold in units of 100 shares of preferred at $100.00 per share and 60 shares of common stock at $10.00 per share, so that a unit would cost $10,-600.00. He testified that while he and Mr. Koman were exceptions to the unit rule they were to pay cash for the shares they did secure. He testified he did so. Morrissey further testified the stock certificate in question was issued to Koman about a month before he was to leave for pre-seasonal football camp and on the basis he was no longer going to play football.

Shortly after the issuance of the stock certificate on June 9, 1965, Koman told Morrissey he was going back to playing

football for at least one more year, and about 25 to 30 days after the certificate was issued Koman did in fact leave for football camp with the St. Louis Football Cardinals. On August 2, 1965, Morrissey wrote to Koman stating: "With regard to our present method of operation, here is the manner in which all concerned with the company believe that it should be handled, and I concur completely with them." The letter went on to name four individuals and to designate the work for which they would be responsible. The letter continued: "These people in your absence may call upon you for advice at their discretion. However, they are completely responsible and may exercise their judgment fully, and matters should not be confused by having two people talk to any sub-contractor, supplier or architect. * * * Our type of operation needs constant and conscientious attention; it cannot and will not be handled in absentia. I think this clearly indicates how we are proceeding, and I know that we will have your full and immediate cooperation, and I will be happy to review this with you at our first opportunity."

Morrissey also testified that after he left for football camp Koman did not perform the duties with respect to appellant corporation for which he had earlier stated Koman was to be responsible. He admitted, however, that he continued Koman's salary until July of 1966 when Koman again informed him he was going to sign a 2-year contract for the football seasons of 1966 and 1967. Morrissey told him: "* * * we couldn't go through another year as we did previously, and if he was going to play football he would have to play football." Then on August 17, 1966, Morrissey wrote to Koman (who was then at the football camp) a long letter covering several different matters in which they were involved and containing this paragraph: "I will try to contact you over the weekend; there are several items that I would also like to culminate. First of all, the stock which was issued in Alabama to you for which there has not been any payment and which

should logically be returned and voided. Secondly, I think that you, for our mutual protection, should resign as a Director and Officer on all corporations that we have; the most obvious reason being that directors are liable for withholding taxes and other things which, if you are not active, would be prohibitive as far as you are concerned. We will prepare the resignations so that we can execute these matters with as little inconvenience to you as possible; also upon the return of the monies, etc., to which you are entitled, I think that we should execute mutual releases so that everyone is satisfied completely."

On cross-examination Morrissey testified that Koman was " * * * either paid by Collegiate Enterprises or Nirvana Development Company." It appeared one of these corporations does the development and research work on a project and the other handles the actual construction of the project. Just exactly what the appellant corporation did never clearly appeared, but presumably it was either title holder or operating agent or both for the project in Alabama.

The parties entered into a stipulation which showed that in at least two years prior to 1965 Koman received more than $600.00 a month from various corporations or their predecessors involved in these projects. In 1963 Koman received $12,000.00 and in 1964 he received $7,650.00.

Appellants' Exhibit 2, the minutes of the first meeting of the incorporators of the appellant corporation, was offered and received into evidence and has been lodged with this court. Therein Koman was referred to as "a subscriber to the capital stock of the Company" and was elected Secretary and Director. Koman's Exhibit B is the minutes of the first meeting of the Board of Directors of appellant corporation stating the meeting took place immediately following the meeting of the incorporators covered by appellants' Exhibit 2. At this meeting Koman was elected Vice President and Secretary.

Appellants' Exhibit 6 was offered and received into evidence and has been lodged with this court. It is a schedule of the common stockholders of appellant corporation. The exhibit was not dated nor was any testimony given as to the matter. It is fairly inferable the exhibit represents existing records of that corporation as kept and maintained by the officers thereof as of the date of trial in February, 1967. It lists the various shareholders with the number of the certificate each holds, the number of shares, date of issue of the certificate, and the status as to whether the certificate is presently outstanding or has been cancelled or surrendered. On this exhibit Certificate No. 13 for 58 shares is shown as held by William Koman, issued June 9, 1965, and is shown as "outstanding".

The trial court held the certificate was legally issued, found the appellants had wrongfully refused to comply with relator's demands to see certain records of the defendant corporation, and issued its peremptory writ requiring appellants to grant relator access to the corporate records. It refused to compel Morrissey to pay the penalty prescribed in the statute for refusal to grant access on the grounds there was a bona fide dispute as to relator's certificate. There is no issue raised on this appeal as to this portion of the trial court's ruling.

■ Mandamus is a civil procedure in the nature of an action at law and the judgment of the trial court cannot be disturbed on appeal if there is any substantial evidence tending to support it. State ex rel. Maxwell v. Sevier, Mo.App., 179 S.W. 2d 492; State ex rel. Journal Printing Co. v. Dreyer, 183 Mo.App. 463, 167 S.W. 1123. The trial court found Koman's certificate valid and to have been legally issued. There was substantial evidence presented to the trial court to support that decision. Such evidence is to be found in Koman's testimony he set up the complete disbursement of the job in Alabama; he worked with the lender to secure financing; and he completely bid out the job. There is also the evidence given by both Morrissey

and Koman that in response to Morrissey's request Koman investigated certain properties in Alabama with a view toward their being used by the appellant corporation. In addition, the letter of August 2, 1965 from Morrissey to Koman supports Koman's position. Therein Morrissey, who now contends Koman's stock was issued to him only on condition he did not continue to play football, wrote to Koman who was then at football camp, delineating the job responsibilities of certain other employees and stating these employees could call upon Koman for advice in Koman's absence. Nothing was said therein about turning back his stock because he was going to play football. Neither was any demand made that he pay cash for the stock. Appellants' own exhibit shows that they made no demand for the return of the stock or for any payment until August 17, 1966.

In addition, even Morrissey admitted that Koman was " * * * supposed to be accountable for the acquiring of the bids and the overall construction phase of the project from the initial stage of construction to completion." Of course, Morrissey did testify Koman did not perform these services; but the trial court, who had an opportunity to view the witnesses and hear their testimony, believed Koman and we think this is a case peculiarly calling for our deference to his decision.

■ In connection with this allegation of error appellants urge that Koman was paid a salary for such services and thus the stock must be considered as having been issued without any consideration therefor. We cannot agree. Morrissey testified that Koman was " * * * either paid by Collegiate Enterprises or Nirvana Development Company." There was evidence showing that Koman received salary from six other corporations, but there was no evidence he was ever paid anything by the appellant corporation. While there is some testimony which, with the reasonable inferences to be drawn therefrom, indicates these various corporations were somehow connected, there is no direct evidence nor

any from which it can reasonably be inferred that payment by these other corporations to Koman was for or on behalf of the appellant corporation. Neither can it be inferred Koman was directed by these other corporations to do this work for appellant corporation. Nor does it appear he did not do work for the corporations who paid him. We rule the appellants' first allegation of error against them and hold Koman's stock certificate was paid for by his services and valid.

■ We pass now to appellants' second allegation of error. Stock Certificate No. 13 made out in the name of William Koman was introduced into evidence without objection. Under such circumstances the certificate raises the presumption Koman was the legal owner of the stock represented by the certificate. Zorensky v. Wellston Clothing Co., Mo.App., 223 S.W.2d 851, l. c. 854. Appellants thereafter had the burden of going forward with evidence to rebut this presumption. One of the theories they offered to do so was that Koman's stock was void because the issuance thereof was never authorized, ratified or approved by the Board of Directors or stockholders. Assuming arguendo failure of the Board or stockholders to so act would render the issuance of Koman's stock void, such theories or allegations do not prove themselves. No testimony or evidence to support such an allegation was offered or given. In fact, the evidence strongly tends toward the opposite conclusion.

■ Exhibits 2, B, 4 and 6 show that Koman attended the first meeting of the incorporators of appellant corporation where he was elected Secretary and Director, and was referred to in the minutes thereof as a subscriber to the capital stock of the company; that he attended the first meeting of the Board of Directors of appellant corporation and was elected Vice President and Secretary; that both of these meetings took place some nine days after the issuance of stock to Koman and Morrissey; that the stock certificate book of appellant corporation and a list of the com-

mon stockholders shows that Koman's certificate No. 13 for 58 shares in appellant corporation as late as the date of trial (February, 1967) was still outstanding and he was therein referred to as a shareholder. When this evidence is considered together with the total absence of any affirmative evidence going to prove appellants' contention, their failure to carry the burden of going forward with the evidence becomes readily apparent. We rule this allegation of error in favor of relator.

The judgment is affirmed.

WOLFE, Acting P. J., and MARSHALL CRAIG, Special Judge, concur.