|122   61|
|138  445|
|122    61|
|101a  ³126|

ANDERSON *et al., Appellants,* v. PUBLIC SCHOOLS.

Division One, May 14, 1894.

1. **Contracts:** ADVERTISEMENTS. Contracts may originate in advertisements addressed to the general public.

2. ——: ——. The intent manifested by an advertisement must govern in its interpretation. Where the advertisement is nothing more than a suggestion to induce offers of a contract by others it imposes of itself no liability.

3. ——: ——: PUBLIC SCHOOL BUILDING. An advertisement for bids for the erection of a public school building declared that the school board reserved the right to reject any or all bids. It was a rule of the board, however, that all contracts should be let "to the lowest and best bidder." Plaintiff submitted a bid (the lowest) for the erection of the building; but the board awarded the work to another; *held,* that plaintiff had no cause of action, even if the board acted "arbitrarily and capriciously and through favoritism," in awarding the contract.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*J. M. Holmes* for appellants.

This suit is brought for the purpose, not only of recovering the damages sued for, but for the purpose of testing the right of bidders under the circumstances detailed in the petition. It is not necessary to discuss the nature of the defendant corporation. It is clearly defined by the statutes and by many decisions of this court. That it had the power and authority to make contracts for the erection of buildings as set forth in the petition, will not be disputed. That it had the power and authority to make, for its own guidance

and for that of persons dealing with it, the rules and regulations set forth in the petition, will not be disputed. R. S. 1889, sec. 8, page 2172. That all persons dealing with it had notice and knowledge of its powers in the premises, can not be disputed, the acts creating it being public statutes. R. S. 1889, sec. 15, p. 2173. That it did make the rules and regulations set forth in the petition is admitted by the demurrer. Those rules are binding upon it in its dealings with others, and enter into and constitute a part of all proposals and contracts for the erection of buildings. 1 Morawetz on Private Corporations, sec. 501; see, also, authorities cited. It can, then, fairly be assumed that in advertising for bids for the erection of the building described in the petition, one of the conditions binding upon the defendant was, that the bid should be awarded to the lowest and best bidder. Now, the rights of the lowest bidder, providing he has duly complied with all the requirements of the proposal, are fixed and defined by many decisions. He acquires a right to the contract, and the contract can not be let to a higher bidder. If, in point of fact, it is let to a higher bidder the performance of it by such bidder will be enjoined. *State ex rel. v. Trenton*, 49 N. J. Law, 339; *Mayor v. Keyser*, 72 Md. 106. Again, in case the contract is let to one who is not the lowest bidder, and he actually performs it, he can not recover, as the contract is void. *People ex rel. v. Gleason*, 121 N. Y. 631. The lowest and best bidder acquires, by his bid, a vested right to the contract and to the emoluments and profits thereof. He has a right of action at common law for the profits which he would have earned by the performance. *McNiel v. Chamber of Commerce*, 154, Mass. 277; *People v. Campbell*, 72 N. Y. 496; *People v. Thompson*, 99 N. Y. 641. We do not for one moment deny the right of the defendant to reject all bids and advertise for

new ones. That right is too clear for discussion. *American Pavement Company v. Wagner*, 139 Pa. St. 623; *Walsh v. Mayor, etc.*, 113 N. Y. 142. To deny such a right would put the defendant at the mercy of a single bidder. It would deprive it of its right to abandon its project in case all bids were for an amount greatly above its expectations. It would force it to build or pay the profits accruing to the bidder, even in cases where building might be ruinous. Such is not our claim. We contend, however, and the decisions cited support the contention, that while the defendant had the undoubted right to reject all bids, whether such right had been reserved in the advertisement or not, it had not the right to reject the lowest of one set of bids and accept a higher one of the same set.

*Charles B. Stark* for respondent.

(1) When proposals to do public work are invited, no cause of action accrues to any bidder because of a refusal to accept his bid and award the contract to him. *Coquard v. School District*, 46 Mo. App. 6; 1 Dill. Mun. Corp. [4 Ed.], p. 546, sec. 470; 1 Add. Cont. [8 Ed.], *p. 15, foot p. 37; *Smith v. Mayor*, 10 N. Y. 504; *State ex rel. v. Directors*, 5 Ohio St. 234. (2) When an act is legal in itself, the motive with which it is done is immaterial. Hence the plaintiffs' case is not strengthened by the allegation that the defendant rejected the plaintiffs' bid arbitrarily, capriciously and through favoritism and bias. *Barr v. Cubbage*, 52 Mo. 404; *Buford v. Packet Co.*, 3 Mo. App. 159; *Chatfield v. Wilson*, 28 Vt. 49; *Mahan v. Brown*, 13 Wend. 261; 2 Dill., Mun. Corp. [4 Ed.], sec. 987*n*.

BARCLAY, J.—Plaintiffs appealed from a judgment based on a ruling sustaining a demurrer to their petition.

The substance of their allegations is as follows:

Plaintiffs are copartners in the business of building. Defendant is a corporation, having charge and control of the public schools and school property in the city of St. Louis.

The defendant had a well known rule in regard to buildings by which it was provided that all new buildings, etc., should be "let by contract to the lowest and best bidder."

Defendant, being desirous of erecting a large school building to be known as the new high school, duly advertised for bids for the erection thereof. The advertisement was this:

"PROPOSALS FOR THE ERECTION OF THE NEW HIGH SCHOOL BUILDING ON GRAND AVENUE.

"*Office of Board of President and Directors of the St. Louis Public Schools.*

"ST. LOUIS, August 28, 1891.

"Sealed proposals will be received at the office of the secretary on or before Monday, September 7, 1891, at 4 P. M. for the erection of the New High School on Grand Avenue.

"All bids are to be addressed to John W. O'Connell, Esq., chairman building committee, and must be accompanied by a certified check, payable to the order of 'Board of President and Directors of the St. Louis Public Schools,' or cash, amounting to $2,500, which is to be forfeited by the successful bidder if he fails or refuses within five days after the award of contract by this board, to enter into written contract, and furnish good and sufficient security for the faithful performance of the work.

"Plans and specifications can be seen at the office of Furlong & Brown, the architects, room 38, southeast corner of Broadway and Olive street.

"The board reserves the right to reject any or all bids.          C. L. HAMMERSTEIN,
    "*Secretary Building Committee.*"

Plaintiffs submitted a bid (in accordance with the above advertisement) to build the proposed high school for $196,965. Defendant refused to accept the bid of plaintiffs; but "without cause, arbitrarily, and capriciously, through favoritism and bias," rejected it, and then accepted the bid of another for $197,000.

Plaintiffs alleged a loss of profits in the sum of $15,000, and prayed judgment, etc.

The above is a sufficient outline of the facts on which plaintiffs rely.

It is claimed by defendant, in support of the demurrer and of the judgment in the trial court, that, as the plaintiffs' bid related to public work, no action can be maintained for the refusal to allow plaintiffs to execute such work. The contention is that bids for public work are not governed by the general principles of the law of contracts.

We do not consider it necessary to examine into the soundness of that contention, as we think the ruling of the trial judge was obviously correct, even conceding to plaintiffs that the transaction should be treated as an ordinary one between individuals irrespective of the supposed public nature of its subject-matter.

That binding obligations can originate in advertisements addressed to the general public, may be assumed as settled law to-day.

But the effect to be given to such an advertisement as the basis of a contract depends entirely on the intent manifested by its terms.

A public proposal of that nature may be so expressed as to need but an acceptance, or the perform-

ance of some act by a person, otherwise undesignated, to constitute an enforceable legal agreement.

While on the other hand, the proposal may amount to nothing more than a suggestion to induce offers of a contract by others. The latter sort of proposals have some resemblance to (though they impose a still lighter obligation than) the class of promises described by Pothier as those in which the intent is exhibited (either by the words employed, or by the circumstances, or in some other manner) not to give to the person to whom they are made, the right of demanding their performance. Pothier, Obligations [Evan's Ed.], Part. 1, * p. 3.

Proposals of contract by advertisement have a place in the modern common law of England and of this country, though they have not been so definitely classified in our jurisprudence as in that of some continental nations. Mr. Pollock in his valuable treatise on the Principles of Contract, remarks on this point: "We have no special term of art for a proposal thus made by way of general request or invitation to all men to whose knowledge it comes." [4 Ed. *p. 13.]

Still less have we any scientific nomenclature for that subdivision of the class of public proposals with which we have now to deal, namely, that class in which is disclosed the intent to invite mere offers of a contract as distinguished from an intent to propose a contract for direct acceptance by whom it may concern.

But the principles to be applied by our law to such proposals are not, on that account, uncertain or obscure. When the intent expressed in the advertised proposal, is reduced to certainty by interpretation, our system of administration of law is fully capable of giving effect to that intent.

In the case in hand, the advertisement has the following caption: "Proposals for the erection of the

new high school building on Grand Avenue." But the opening lines of the official statement which follows, show that the caption refers to the proposals to be received, and is not intended to describe the effect of the advertisement as a whole.

If there was otherwise any doubt on this point, it is set at rest by the last sentence, viz.: "The board reserves the right to reject any or all bids." That language demonstrates the nature of the advertisement, as a mere invitation for offers for a contract. As such it did not lay the foundation of a completed contract. It was merely the opening of negotiations for a contract. The plaintiffs' bid was a proposal to build, which the defendant by the terms of its statement had the right to reject.

The facts in judgment are wholly unlike those considered in *McNeil v. Boston Chamber of Commerce* (1891), 154 Mass. 277, cited on behalf of the plaintiffs. In that case it was found as a fact that the defendant had agreed with the bidders to accept the lowest bid, and accordingly was held liable for a breach of that agreement. But in the present appeal that essential fact is wanting. The judgment of the supreme court of Massachusetts proceeds throughout on the assumption that that fact is an essential premise to the conclusion reached, and we think the principles declared by that learned court in that opinion are in no respect discordant with the judgment we are about to pronounce.

No claim is advanced in the petition looking to a recovery for fraud or deceit in making the proposals for bids. It is indeed asserted that the defendant rejected plaintiffs' bid, "without cause, arbitrarily and capriciously, through favoritism and bias." But if defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs

because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause. Whatever its rules or practice, as to the acceptance of bids may have been, plaintiffs' rights can not be justly held to be greater than those conferred by the published advertisement on which their bid was made. That advertisement was not an offer of a contract; but an offer to receive proposals for a contract. (*Spencer v. Harding* (1870), 5 C. P. L. R. 561.)

There is no suggestion that the offer was not made in good faith.

On the facts stated we see no just ground on which the defendant can be held liable.

We think the learned trial judge was right in sustaining the demurrer to the petition. The judgment is affirmed. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.