Paul C. Wilson, Judge,
Concurring in Result
The trial court dismissed the petition filed by Byrne & Jones Enterprises, Inc. (“B&J”) on the ground that B&J lacked standing. Even though the trial court’s *857 action (i.e., dismissal) was correct, its Reasoning was overbroad. Standing is assessed with respect to each claim, and a claim is prayer for specific relief based on alleged facts. If section 177,086.2[1] authorizes losing bidders to recover their, bid preparation costs in cases in which the bidding procedures were not followed, B&J, (as a losing bidder) plainly would have had standing to bring such a claim. Rather than a lack of standing, however, the majority opinion .holds — properly, in my view — that B&J’s claim for bid preparation costs should have been dismissed for failure to state a claim because such a claim is not expressly provided for in (and this Court will not infer such a claim from) the language of section 177.086.2.
B&J’s only other claim was a prayer for an injunction to prevent Monroe City R-l School District (the “District”) from going forward with its construction project on the basis of the contract it let to the winning bidder, ATG Sports, Inc (“ATG”). This claim (like B&J’s claim for bid preparation costs) was based on allegations that the District failed to comply with the bidding procedures in section 177.086.2 when awarding the contract to ATG. But this Court cannot reach the question of whether B&J has standing to bring such a claim because the relief sought is no longer available, i.e., because B&J’s claim for in-junctive relief is moot.
[T]his court has said that [cjourts are not organized and maintained for the purpose of vindicating the actions of parties in bringing lawsuits or to settle abstract propositions of law, where no relief can be granted. That some relief is sought which may be granted is the only reason the courts recognize for the prosecution of éáuses. If no relief can be granted, either because it appears that such relief has already been obtained, ' or because the situation has so changed that the relief sought cannot be granted, the court will not go through the empty formality of determining whether or not the relief asked for might have been granted, if it had not already been granted or could have been granted but for changed conditions.
Gershman Inv. Corp. v. Danforth, 475 S.W.2d 36, 38 (Mo. banc 1971) (emphasis added) (quotations and citations omitted). See also Dotson v. Kander, 435 S.W.3d 643, 644 (Mo. banc 2014) (“To exercise appellate jurisdiction, there must, be an actual controversy that is .‘susceptible of some relief..’ When an event occurs that makes .a court’s decision unnecessary or makes granting effectual relief impossible, the case is moot and should be dismissed.”) (citations omitted).
The majority opinion concludes that, because B&J’s claim for injunctive relief is moot, there is no basis to vacate the trial court’s dismissal and remand. I agree. Unfortunately, however, the majority opinion then goes on at some length to explain why — if B&J’s claim for injunctive relief were not moot — B&J should have had standing to pursue it. This is exactly the type of wholly advisory opinion that Gersh-man, Dotson, and a host of other cases on the effect of mootness are meant to prevent-. I write separately to explain not only that the majority opinion’s ruminations about this subject are dicta in this case, but also that they should not be followed in future cases.'
State bidding statutes — including section 177.086.2 — are enacted to protect the public, not the bidders. As a result, precedent of long standing explains that only taxpayers ' have standing to enforce those laws once a contract is awarded. B&J is not (and does not claim to be) a taxpayer of *858 the District, and the trial court was correct in concluding that B&J lacks standing to assert, its claim for injunctive relief.
B&J’s petition references “the competitive bidding process required by law” but fails to cite any state statutes or local regulations applicable to the District’s project. On appeal, B&J bases its claim solely on section 177.086, which provides in pertinent part:'
No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by the district and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the district shall have the right to reject any and all bids.
§ 177.086.2 (emphasis added).
B&J claims that it has a legally protect-able interest sufficient to give it standing to seek an injunction to prevent the District from proceeding with its construction project under the contract it let to ATG based on the District’s alleged violation of section 177.086.2. This Court properly rejected such claims more than a centuiy ago, •
It is, indeed, asserted that the defendant rejected the plaintiffs’ bid ‘without cause, arbitrarily and capriciously, through favoritism and bias.’ But, if the defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause..
Anderson v. Bd., etc., of Pub. Sch, 122 Mo. 61, 27 S.W. 610, 612 (1894) (emphasis added).
Later, this Court expanded on Anderson in State ex rel. Doniphan State Bank v. Harris, 176 S.W. 9 (1915). There, the Court held that a party “has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder, but must maintain it, if at all, in its role as a taxpayer in Ripley County. In that capacity it represents the public, and it is the interest of the public which is to be considered, not that of relator as a bidder for the funds.” Id. at 10 (citation omitted, emphasis added).
Anderson and Harris formed the basis for State ex rel. Johnson v. Sevier, 339 Mo. 483, 98 S.W.2d 677, 680 (1936), which remains this Court’s leading decision on the issue of standing to enforce public bidding laws. Sevier holds that — when a losing bidder is not also a taxpayer — the losing bidder lacks standing to challenge the award of a public contract to another based on a violation of public bidding laws because:
it was incumbent upon them to allege a special pecuniary interest in the matter, showing a clear legal right to the relief asked, which they did not and cannot do, for the reason that the rejection of their bid did not give them any private right which they could enforce by mandamus or otherwise.
Sevier, 98 S.W.2d at 679 (emphasis added).
Sevier reaches this conclusion on two grounds, both of which are applicable to and dispositive of the question of standing in this case. First, if a public entity has authority to reject any bid (or all the bids), a losing bidder has no legally protectable interest in the outcome of the bidding process (or, at. least, no interest that is different, from the taxpayer’s interest). Id. See also Regan v. Iron County Court, 226 Mo. 79, 125 S.W. 1140, 1142 (1910) (not even the “highest and best bidder” has a right to the contract when the statute expressly gives the public entity authority to reject *859 “any and all bids”). Second, Sevier holds that a losing bidder lacks standing because public bidding statutes are “designed for the benefit and protection of the public and not the bidders.” Id. As a result, unless the bidder sues as a taxpayer and representative of the general public interest, it has no standing to enforce such laws and challenge the award of a public contract. Id.
In La Mar Const Co. v. Holt County, R-II Sch. Dist., 542 S.W.2d 568, 570 (Mo.App.1976), the court of appeals applied Sevier and held that a losing bidder has no standing to challenge a school district’s compliance with section 177.086.2 after the contract is awarded. Following the two-step analysis in Sevier, La Mar first holds that the losing bidder lacked standing because it has suffered no injury to a legally protected interest. Id. (noting Anderson “recognized the principle of law that where a public body reserves the right to reject any and all bids that are submitted to it they are empowered to do just that and by rejecting a bid they create no vested interest or property right in the rejected bidder”). See also State ex rel. Page v. Reorganized Sch. Dist. R-VI of Christian County, 765 S.W.2d 317, 321 (Mo.App.1989) (even the lowest and best bidder has no right to relief under section 177.086.2). Second, La Mar holds that section 177.086.2 “clearly is intended to safeguard the interest of the public and is not designed to shelter the rights of individuals, i.e., the unsuccessful bidder.’’ La Mar, 542 S.W.2d at 571. See also O. J. Photo Supply, Inc. v. McNary, 611 S.W.2d 246, 248 (Mo.App.1980) (competitive bidding laws “are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders”).
Accordingly, La Mar holds that only a taxpayer — not a losing bidder that is not otherwise a taxpayer — has standing to challenge a school district’s compliance with section 177.086.2 after the contract is awarded: -
La Mar has not brought this suit as a taxpayer or as a representative of other taxpayers but rather has sought relief to enforce the performance of an alleged public duty to protect an alleged private right. It is necessary for La Mar to allege a private, pecuniary interest in the matter but as an unsuccessful bidder it has no private, pecuniary interest in this matter which the law will recognize and enforce. As an unsuccessful bidder, La Mar was not deprived of anything to which it was legally entitled and therefore cannot state a cause of action.
La Mar, 542 S.W.2d at 570-71 (citation omitted, emphasis added). See also Sevier, 98 S.W.2d at 681.
B&J argues that a losing bidder should have standing to enforce the provisions of section 177.086.2 after the contract is awarded because, as noted in La Mar, “[t]he rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason.” La Mar, 542 S.W.2d at '571. Instead, “[t]he officials must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and ' corruption.”' Id. The majority opinion (albeit in dicta) agrees.
But the majority opinion’s conclusion that B&J has standing to seek an injunction (or would have had such standing had this claim not been moot) because B&J was “denied a fair and equal opportunity in the bidding process” confuses two unrelated concepts, i.e., the basis for a claim and standing to bring that claim. Invoking La Mar, the majority opinion concludes that B&J’s petition alleges a sufficient basis for a claim of collusion and favoritism against the District. .This is correct — the petition *860 describes a violation of section 177.086.2. But that is not the question. The question is whether B&J has standing to bring such a claim. That is why La Mar, after describing that favoritism and collusion may be the basis for a claim, expressly holds that only taxpayers as representatives of the public — and not losing bidders — have standing to bring such a .claim. La Mar, 542 S.W.2d at 571 (“If any of these standards are violated the public, as the real, moving party, may bring mandamus to enforce cancellation of the contract and its award to the lowest responsible bidder.”) (Emphasis added).[2]
La Mar, Sevier, and Anderson cannot be distinguished from this case on the ground that B&J is challenging the District’s process, not its decision to award the contract to ATG,-because this is not supported by B&J’s allegations. Where B&J alleges that the District “acted arbitrarily, capriciously, unfairly, and in violation of the competitive bidding process required by law,” the allegation expressly states that the District did so by “accepting the bid of ATG[.]” [Emphasis added.] Similarly, where B&J alleges that the District “did not act in good faith, or in the best interest of the public ... [and] in collusion with ATG and with personal favoritism for ÁTG,” the allegation expressly states tliat the District committed these infractions by “awarding the project to ATG[.]” [Emphasis added.] Even though B&J alleges that the District did not give B&J a “fair opportunity” to compete against ATG, B&J does not claim that section 177.086.2 gives it that right.- Such a claim would be unwarranted because the statute expressly authorizes the District to reject “any bid,” • including the bid from B&J.
Nothing in section 177.086 (or the Missouri cases construing this or any other competitive bidding statute) draws a distinction between the bidding process and the award of a contract. All requirements imposed by state bidding laws are concerned with process, and those requirements are imposed solely “for the benefit and protection of the public and not the bidders.” Sevier, 98 S.W.2d at 679. So, if the contracting entity is permitted to reject “any and all bids,” an individual bidder is not permitted to wait until the bidding process is over and the contract is awarded before claiming entitlement to any particular process or consideration.[3] Only the public, through its representative taxpayers, has standing after the' contract is awarded to enforce the bidding laws and challenge the performance of the officials involved, and the taxpayers’ remedy is limited to declaratory or injunctive relief. See E. Mo. Laborers Dist. Council v. St Louis County, 781 S.W.2d 43, 46 (Mo. banc 1989) (“The right of a taxpayer, on behalf of himself and other taxpayers similarly situ *861 ated, to bring an action to enjoin the illegal expenditure of public funds cannot be questioned.”); Stricker, 858 S.W.2d at 778 (same).
Great reliance' is placed',' upon a' lone federal case holding that, under Missouri law, “an unsuccessful bidder has standing to challenge a contract that was not fairly bid.” Metro. Express Servs., Inc. v. City of Kansas City, Mo., 23 F.3d 1367, 1371 (8th Cir.1994). This conclusion is neither binding nor persuasive, however, because it is based solely on Strieker; and the question of losing-bidder standing' was never at issue in Strieker because the state conceded that at least some of those challengers were taxpayers. Stricker, 858 S.W.2d at 775 (whether the non-taxpayer losing bidder “has standing as a participant in the public contract process is of no consequence to this action and is not addressed by this court”).[4] Aside from its misplaced reliance on Strieker, Metropolitan Express makes the mistake of focusing on the statements in La }/Lar describing an actionable violation of public bidding laws but ignoring the holding in La Mar that only taxpayers may bring such claims. Accordingly, Metropolitan Express misstates Missouri law on this issue.[5]
To ignore Missouri' precedent and conclude, (even in dicta) that a losing bidder can 'have standing to seek an injunction based on alleged violations of state bidding laws after the contract has been let is to create.a new remedy for unsuccessful bidders out of whole cloth. That is a legislative process,[6] not a judicial one. If the
*864 General Assembly, administrative agencies, or local governments believe such a remedy is in the best interests of all they serve, they can create one. And, in doing so, they likely will give far more clarity regarding the nature and extent of that remedy than any judicial decision. For example, a legislated remedy allowing losing bidders to challenge the award of a contract based on alleged violations of the bidding laws likely would have a time limit to protect the contracting agency (and the public) from claims brought by a losing bidder after reliance upon the contract becomes too great. This is preferable to permitting a losing bidder to sue at any time as long as the contract has not been fully performed, i.e., as long as its claim for injunctive relief is not moot.
Ultimately, the rationale for giving standing ’ to “all bidders ... within the zone of interests” is not persuasive. It is not self-evident that the century-old taxpayer standing limitation in these cases is keeping a material number of meritorious claims out of the courthouse. Losing bidders who are taxpayers can sue, and those who are not taxpayers should have no difficulty in recruiting a taxpayer to join the suit if there is a manifest injury to the public’s interests.[7]

Conclusion

Because a losing bidder has no legally protectable interest in the enforcement of section 177.086.2 after the contract is awarded (or at least no interest distinct from the public’s interest that the statute was enacted to protect), and because B&J *865 does not claim to be a taxpayer suing as a representative of the public, I reject the dicta in the majority opinion suggesting that — if its claim for injunctive relief were not moot — B&J would have standing to bring that claim. Instead, the holding that B&J’s claim for injunctive relief is moot is correct, and, respectfully, it is all that should be discussed.

. Unless otherwise stated, all statutory refer-enees are to RSMo Supp. 2013.

. To be clear, the prohibitions against capriciousness, collusion, and favoritism described in La Mar and similar cases are meant only to identify those circumstances in which a taxpayer may challenge the award- of a public contract from those in which the award is within the entity’s unreviewable discretion. Compare State ex rel. Stricker v. Hanson, 858 S.W.2d 771, 778 (Mo.App.1993) (enjoining award of contract to nonresponsive bidder), with KAT Excavation, Inc, v. City of Belton, 996 S.W.2d 649, 652 (Mo.App.1999) (upholding award of contract as proper exercise of discretion). See also Regan, 125 S.W. at 1140 (discussing discretion afforded by competitive bidding statutes generally); Page, 765 S.W.2d at 322 (same).

. I do not mean to suggest that a bidder or potential bidder lacks standing to seek declaratory or injunctive relief based upon alleged violations of a state bidding' law while the bidding process is ongoing. That question, like the question of losing-bidder standing after the contract is awarded^ is not before the Court.

. In addition, the plaintiff in Metropolitan Express was a not a losing bidder because it was not permitted to bid at all. ■ ■

. Reliance on Pub. Commc’ns. Servs., Inc. v. Simmons, 409 S.W.3d 538, 546 (Mo.App.2013), also is misplaced because it, too, relies on Metropolitan Services for the , proposition that an unsuccessful bidder has" standing to challenge a contract award under Missouri law “if the bidding procedure did not permit all bidders to compete on equal terms.” Id. at 546 (quoting Metro. Express, 23 F.3d at 1371). As explained'above,'this is a misstatement of Missouri law. ' *

. Many states have enacted statutory or. administrative remedies allowing losing bidders to challenge a bidding process both before and after the contract has been let. Ordinarily, these remedies are administrative and, if such administrative remedies are pursued in a timely fashion, subject to judicial review. Moreover, some (but certainly not all) permit a stay of the contract in the .event of a timely protest. See Ala. Admin. Code r, 355 — 4—1— ,04(14) (requiring “[ajny bidder- adversely affected” to file a notice of protest and a formal written protest seven days thereafter); Ala. Code § 41-16-31 .(should a protest prove unsuccessful, a "bona fide unsuccessful bidder" may “bring a civil action in the appropriate court to enjoin execution of any contract entered into[.]”); Alaska Stat. §§ 36.30.560— .699 (providing for both a pre- and post-award protest procedure by "an actual or prospective bidder or offeror” either before the award or within 10 days thereafter); Alaska Stat. § 35.30,685 (providing for appeal to the superior court for certain final bid protest decisions); Ariz. Admin. Code R2-7-A901-A9J.1 (permitting any "interested party” to bring a pre- or post-award protest); Ark. Code .§ 19-11-244 (permitting protest brought within 14 days by "[a]ny actual or prospective bidder, offeror, or contactor”); Ark, Code § 19 — 11—244(g) (providing successful protestors with the right to pursue bid and proposal cpsts through the Arkansas Claims Commission and allowing for review of final protest decision by mandamus or injunctive relief); California’s bid protest procedures vary depending on the goods at issue, and the type of solicitation, although California’s rules do not allow for a pre-award protest, see, e.g., Cal. Pub. Cont. Code § 10306 (covers the state’s acquisition of goods and .services), § 10345 (covers consulting and service contracts), § 12102.2(g) (covers information, technology goods and services), and § 12126 (provides for an “alternative protest procedure”). In . California, review, of alternative protests is limited, Cal. Code Regs, title 1,§ 1438, while administrative mandamus review is available otherwise, Cal. Civ. Proc. Code § 1094.5, or under a writ of mandate procedure, Cal. Civ. Proc. Code § 1085; Colo. Rev. Stat. § 24- *862 Rev. Stat. § 24-109-102 (providing for protest within seven working days by "[ajny actual or prospective bidder, offeror, or contractor”); Colo. Rev. Stat. §§ 24-109-205— 206 (appeal of a final protest decision lies under the exclusive jurisdiction of the Denver district court and may be taken within 10 working days after the decision); Conn. Gen. Stat. § 4e-36 (providing for protest by "[ajny bidder or proposer on a state contract., ,to a subcommittee of the State Contracting Standards Board” not later than 14 days, which is specifically limited "to the procedural elements of-the solicitation or award process, or claims of an unauthorized or unwarranted, noncompetitive selection process”); Conn. Gen. Stat. § 4e-37(j) (providing that a subcommittee decision is "final and not subject to appeal”); Delaware does not have a formal administrative protest process although agency heads institute informal processes under the general authority provided to them by 29 Del. Code § 8903 (2012), see, e.g., Policy of State of Delaware Department of Corrections Bureau of Management Services, Procurement Protest Policy (Eff. November 27, 2012); Fla. Stat. § 120.57(3)(b) (providing for protest procedures for any person "adversely affected by the agency decision” and requiring the filing of a notice of protest within 72 hours and a subsequent formal written protest filing 10 days thereafter); Fla. Stat. § 120.68 (protest decisions reviewable by the court of appeals); Ga. Vendor Manual § 3.8, p. 25 (2010) (permitting "any aggrieved vendor interested in and capable of responding to a competitive solicitation” to file a protest within two business days prior to the closing date of the solicitation and allowing for a stay in the event a protest is timely filed); Amdahl Corp. v. Georgia Dep’t. of Admin. Serv., 260 Ga. 690, 398 S.E.2d 540 (1990) (allowing for judicial review when declaratory relief is sought in the ‘trial court after exhaustion of administrative procedures); Haw, Rev. Stat. § 103D-701 (permitting protest by “[ajny actual or prospective bidder, offeror, or contractor who is aggrieved” within five working days),- Haw. Rev. Stat. § 103D-710(a) (permitting appeal of a final protest bid decision "in the circuit court of the circuit where the case or controversy arises”); Idaho Code § 67-9232 (permitting protest of the terms of a solicitation by any vendor within 10 working days, by a nonre-sponsive bidder within five working days, by a bidder whose bid was considered but rejected within five working days, and "in the case of a sole source procurement,” by any vendor within five working days "from the last date of public notice”); Idaho Code §§ 67-5272 — -5273 (permitting judicial review within 28 days after tlie final order or decision); Illinois protest procedures vary by state agency, although most allow for the filing of a protest within seven to 14 calendar days after a solicitation is issued but do not appear to allow for judicial review, see, e.g., 44 Ill. Adm. Code § 2600.1120(b)(1), 44 Ill. Admin. Code § 1,5550, 44 Ill. Admin. Code § 500.1330; Indiana allows' for a pre-award protest brought within five business days pri- or to the bid due date and a post- award protest brought within five business days- of the award, see Indiana Department of Administration, Procurement Protest Policy (Eff. Nov. 1, 2013); Iowa Admin. Code r. 11-117.20(8A) (2015) (setting out written protest procedures within five calendar days from the date of the award for "[ajny vendor that filed a timely bid or proposal” and permitting judicial review after exhaustion of administrative ’ procedures), Kan. Stat. § 75-3739 (providing that the director of purchases must give seven days’ notice to allow -for protest); Kan. Stat. § 77-613 (appeal allowed under judicial review of agency action); Ky. Rev. Stat. § 45A.285 (permitting written protest by "[ajny actual or prospective bidder, offeror, or contractor who is aggrieved” within two' "calendar weeks); Commonwealth v. Yamaha Motor Mfg. Corp. of Am., 237 S.W.3d 203 (Ky.2007) (holding that an unsuccessful bidder has standing for purposes of judicial review under § 45A.285 after exhausting administrative procedures); La. Rev. Stat. § 39:1671 (permitting protest by “[ajny person who is aggrieved in connection with the solicitation or award of a contract” either two days prior to the award or within 14 days thereafter); La. Rev. Stat. § 39:1691 (appeals lie exclusively with the Nineteenth Judicial District Court but further appeals may be sought the court of appeals and then to the Supreme Court of Louisiana); 5 Me. Rev. Stat. § 1825-E (permitting "aggrieved persons” right of written protest-for contract or grant awards within 15 days of award notification); 5 Me. Rev. Stat. § 1825-F (final protest decision subject to judicial review); Md. Code Regs. 21.10.02.02— 21,10.02.03 (providing for the filing of both a pre- and post-award written protest by "[ajn interested party”); Md, Code Regs. 21.10:01,02 (bid protest decision subject to judicial review); Massachusetts allows for a civil action to enjoin the award or grant of a *863 ■Attorney General’s Office that is not subject to judicial review, see Attorney General of Mass., General Guidelines Regarding Attorney General Bid Protest Cases; Michigan too has only an informal bid protest policy, sea Mich. Comp. Laws § 18.1261(2); Minnesota has no formal bid protest procedure; Mississippi bid protest procedures vary, but they may be protested to the Public Procurement Review Board, see Miss. Procurement Manual §§ 6.101 — 204 (Eff. Sept. 30, 2015); Mont. Code § 18-4-242 (permitting the protest of a solicitation or award of contract within 14 days in writing by "a bidder, offeror, or contractor”); Mont. Code § 18-4-242(7) (exclusive method of appellate review is judicial review); Nebraska provides for a post award written protest within 10 calendar days of ■award, see Neb. Administrative Services Materiel Division — State Protest Bureau, Standard Protest/Grievance Procedures for Vendors (Revised Apr. 16, 2014), and the right to appeal appears limited, see Day v. City of Beatrice, 169 Neb. 858, 101 N.W.2d 481, 488 (1960) (“An unsuccessful bidder is not a proper party to bring an injunction suit to prevent an unlawful expenditure of funds by public officials unless he is also a taxpayer, which must properly be alleged and proved.”); Nev, Rev. Stat. § 333.370 (permitting the filing of a notice of appeal within 10 calendar days by “[a] person who makes an unsuccessful bid or proposal”); N.H. Code Admin. R. 609.02 (providing "informal resolution” to "[a]ny person or association who disagrees with an award” within 15 days); N.H. Rev. Stat. § 541:6 (appeal to the supreme court may be taken within 30 days after decision on rehearing); N.J. Admin Code §§ 17:12-3.2 & 17:12-3.3 (providing for pre-award written protest procedures at least three days prior to bid opening by "[a] vendor intending to submit a proposal” and within 10 days after a bidder "having submitted a proposal” received notice of decision); N.J. Admin Code § 17:12-3.1(b) (final decisions áppealable to the appellate division of the Superior Court of New Jersey); N.M. Stat. § 13-1-172 (providing for written bid protest to "[a]ny bidder or offeror who is aggrieved in connection with a solicitation or award” within 15 days); N.'M. Stat. § 13 — 1— 183 (final decision subject to judicial review); New York does not require administrative exhaustion before judicial review of any final decision but nonetheless various offices have detailed protest procedures, see, e.g., Office of the New York State Comptroller, Contract Award Protest Procedure for Contract Awards Subject to the Comptroller’s Approval (July 10, 2008); 1 N.C. Admin. Code 5B.1519 (providing post-award protest procedures for written protest bids filed within 30 days); N.D. Cent. Code § 54-44.4-12, N.D. Admin. Code 4-12-14-01 — 4-12-14-02 (providing written pre- and post-award protest procedure within seven days of the deadline or decision for ”[a]n interested party” for "the award of a contract, the notice of intent to award a contract, or a solicitation for commodities or services by the office of management and budget or purchasing agency’’); N.D. Admin. Code'4-12-14-03(l)(c) (discussing the right to judicial and administrative review); Ohio’s protest procedures are informally set out by the Office of State Procurement and allow for both pre- and post-award protest, see Ohio Department of Administrative -Services, General Services Division, Supplier Handbook 15 (Rev. June 2015); Okla. Admin. Code § 260:65-1-12 (providing written bid protest procedures for a "bidder” for the "protest of an award of a contract by a state agency ... within ten business days of contract award”); Okla. Admin. Code § 260:65-1-12(6) (providing judicial review of the denial of a bidder's appeal to the director); Or. Rev. Stat. § 279B.405 (providing bid protest filing procedures for a "prospective bidder, proposer, or offeror” and establishing procedures for judicial review); 62 Pa. Cons. Stat. § 1711.1 (providing pre- and post-award written protests before bid opening or within seven days after decision for "[a] bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract”); 62 Pá. Cons. Stat. § 1711.1(g) (providing for appeal within 15 days of the mailing date of a final decision); R.I. Gen. Laws § 37-2-52 (providing ”[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or selection of an award” to file a written protest within two weeks); R.I. Gen. Laws § 37-2-51 (on appeal, decisions in connection with the solicitation or award of a contract are presumed to be correct); S.C. Code §11— 35-4210 (providing written protest procedures for "[a] prospective bidder, offeror, contractor, or subcontractor ... aggrieved in connection with the solicitation óf a contract” or "with the intended award or award of a contract” within 10 to 15 days); S.C. Code § 11-35-4410(6) (final decision appealable to the circuit court); South Dakota has no formal bid protest procedure, although bidders may have taxpayer standing, see H & W Cont *864 racting, LLC v. City of Watertown, 633 N.W.2d 167, 171 (2001) ("[A] taxpayer need not.. .suffer special injury.. .to institute an action to protect public rights.”) (internal quotations omitted); Tennessee's bid protest procedures are promulgated by the Department of General Services, see Tenn. Comprehensive Rules and Regulations of the Central Procurement Office,'§ 0690-03-01.12, and apply to "any aggrieved respondent, challenging the procurement process or contract award[.];” 34 Tex.’ Admin. Code § 67.201 (providing for written bid protest procedure for vendors "aggrieved by the solicitation, evaluation, or award of a contract” within 10 Calendar days); 34 Tex. Admin. Code § 67.201 (agency director's decision is final and no further appeals permitted); Utah Code § 63 G-6a-1602 (providing for the filing of an award protest by “a person” with "standing” and who “is aggrieved in connection with a procurement or an award of contract”); Utah Code § 63G-6a-1603(7) (noting decision "is effective until stayed or reversed on appeal”); Vermont does not appear to have a formal administrative protest process, although informal processes may exist; Va. Code § 2.2-4360 (providing a written bid protest procedure for "[a]ny bidder or offeror, who desires to protest the award or decision to award a contract” filed within 10 days after the award); Va. Code § 2.2-4364(0 (if invoked, a bidder must exhaust administrative remedies prior to judicial review); Wash. Admin. Code § 200-320-500 ("Bidders or potential bidders may file complaints regarding the bidding process.”); Wash. Admin. Code § 200-320-700 — 710 (appeals to be filed within 28 days after award "as identified in the solicitation” and by unsuccessful bidders only "with regard to elements .of the bid submittal and evaluation process”); W. Va. Code R. § 148-1-8 (providing pre- and post-award written protest procedure); Wis. Adm. Code NR § 747.68(6) (providing a written protest procedure for "[a] responsible party or a bidder” within 10 days after issuance and, permitting administrative appeals); 4 Wyo. Admin. Code § 1 (providing written protest procedures, for "bidders, proposers or qualified potential bidders or proposers” within 10 days of notice of intent to award).

. See, e.g., Stricker, 858 S.W.2d at 775; KAT Excavation, 996 S.W.2d at 650; see also Harris, 176 S.W. at 10 ("Relator has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder, but must maintain it, if at all, in its role as a taxpayer in Ripley county. In that capacity it represents the public, and it is the interest of the public which is to be considered, not that of relator as a bidder for the funds.”) (citation omitted).